### No. 26871

### The People of the State of Colorado v. Arthur Smith Driver

(539 P.2d 1248)

Decided August 28, 1975.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, J. Stephen Phillips, Assistant, Deborah L. Bianco, Assistant, for petitioner.

Morrisard & Rossi, P.C., James L. Cox, Jr., for respondent.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant was charged with driving 67 miles per hour. The County Court of Arapahoe County ruled that the 55 mile per hour speed limit was no longer in effect in Colorado; and the court acquitted the defendant. The issue has caused confusion in our courts and involves matters of some moment. We, therefore, took jurisdiction of this case as an original proceeding and issued a rule to show cause why the ruling of the county court should not be reversed. The matter is now at issue, and we make the rule absolute.

For many years and until January 24, 1974 the Colorado statutes provided that speeds in excess of certain limits in given types of areas should be prima facie evidence that the speeds were not reasonable or prudent, and were unlawful. Section 42-4-1001, C.R.S. 1973. The top speed under the statutes was, "Seventy miles per hour on surfaced, four-lane highways."

Early in November 1973 the Congress enacted the Emergency Highway Energy Conservation Act, effective January 2, 1974. 23 U.S.C. § 101, *Note*, Sec. 2(b) (Supp. 1975). This provided that the Secretary of Transportation of the United States could not authorize disbursement of federal funds to a state for any highway project unless that state enforced a highway speed limit not in excess of 55 miles per hour. Effective January 24, 1974 the General Assembly of the State of Colorado added sub-section (7) to Colo. Sess. Laws 1974, ch. 36, 13-5-33 at 217. This provided in part, "no person shall drive a vehicle on a highway . . . in excess of a maximum lawful speed of fifty-five miles per hour." This statute was amended at the same time by adding the following words shown in upper case:

"(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing, OR AT A SPEED GREATER THAN THAT SPECIFIED IN SUB-SECTION

(7) OF THIS SECTION WHEN THE FEDERAL 'EMERGENCY HIGHWAY ENERGY CONSERVATION ACT' IS IN EFFECT WITH RESPECT TO SPEED LIMITS."

On January 2, 1975 the Congress repealed the above mentioned portions of the Emergency Highway Conservation Act and simultaneously *on a non-temporary basis* re-enacted the speed limit restrictions of the emergency act, being Pub. L. 93-643, Federal Aid Highway Amendments of 1974.

Effective July 1, 1975 Senate Bill No. 154 was enacted which amended § 42-4-1001, C.R.S. 1973 to provide that the provisions of subsection (7), heretofore referred to, shall be in full force and effect for so long as the provisions of a federal national maximum speed limit are in effect.

The issue on appeal is whether there was a 55 mile per hour speed limit in Colorado between January 4, 1975 and July 1, 1975.

The trial court found that the respondent in this case was driving at a speed of 67 miles per hour on a Colorado highway on January 7, 1975. The court concluded, however, that the 55 mile per hour statute was not in effect at the time the offense occurred. Among other things, the court ruled that criminal statutes should be strictly — and not liberally — construed; that the General Assembly stated that the 55 mile per hour limit applied when the Federal Emergency Highway Energy Conservation Act remained in effect; that it is not the province of the court to perform a legislative function in amending the act; that the court, "in passing on the guilt or innocence of the accused, has no business even considering maintaining Federal funding."

In an ordinary run-of-the-mill case, there can be no question as to the soundness of the court's observation. This is a case, however, in which there must be a broad perspective in the determination of legislative intent. We reach back to 1887 to observations of Mr. Chief Justice Beck in *Murray v. Hobson*, 10 Colo. 66, 13 P. 921:

"A general rule of statutory construction, but liable to abuse without qualification, is that the intent of the legislature, if it can be ascertained, is to govern. More accurately expressed, the rule is that 'effect shall be given to the intention, whenever such intention can be indubitably ascertained by permitted legal means.' Another statement of the rule is 'so to construe statutes as to meet the mischief, to advance the remedy, and not to violate fundamental principles.' Dwar. St. 181, 184, and note. Vattel says: 'That must be the truest exposition of the law which best harmonizes with its design, its objects, and its general structure.' Among other well-established rules of construction are these: That statutes are to be construed with reference to the objects to be accomplished by them, and with reference to the circumstances existing at the time of their passage, and the necessity for their enactment. Where a statute would operate unjustly, or absurd consequences would result from a literal interpretation of terms and words used, the intention of the framers, if it can be fairly gathered from the whole act, will prevail."

The county judge correctly indicated that the maintenance of federal funding has nothing to do with the determination of guilt or innocence under a criminal statute. This funding, however, has a great deal to do with the legislative intent of the General Assembly, and it should be considered for that purpose.

During the first half of 1975, as well as before and after that period, Colorado was faced with an emergency. There was a need to conserve fuel, and perhaps even more importantly the state was in imminent danger of forfeiting all federal highway funds. Clearly the statutes which became effective January 24, 1974 intended to serve the dual purposes of conserving fuel and maintaining federal funding. We quote with approval the Attorney General's petition:

"The inflexible rule of statutory construction is that the intent of the law-making body must be ascertained and given effect, if possible, and that no statute may be construed in such a way as to defeat the obvious legislative intent. *E. g., Frohlick Crane Services, Inc., v. Mack*, 182 Colo. 34, 510 P.2d 891 (1973); *People v. Meyers*, 182 Colo. 21, 510 P.2d 430 (1973); *Alvarez v. District Court*, 186 Colo. 37, 525 P.2d 1131 (1974); *Cervi v. Russell*, 31 Colo. App. 525, 506 P.2d 748 (1972); *People v. Marques*, 184 Colo. 262, 520 P.2d 113, (1974). In ascertaining legislative intent it is permissible, and in fact proper, to take into consideration the necessity for the law and the remedy in view; that intention is to be presumed which is consonant with reason and will tend to afford a remedy for the evil against which it is the purpose of the law to guard. *Cross v. People*, 122 Colo. 469, 223 P.2d 202 (1950); *People v. Heckard*, 164 Colo. 19, 431 P.2d 1014 (1967); *Murray v. Hobson*, 10 Colo. 66, 13 P. 921 (1887)."

We hold that it was the legislative intent of the General Assembly in enacting the provisions effective January 24, 1974 to fix a speed limit of 55 miles per hour for the period during which the federal restriction, as originated in the Emergency Highway Energy Conservation Act, continued under the Federal Aid Highway Amendments of 1974, until such time as the General Assembly takes further action.

The rule is made absolute and the cause remanded to the county court for proper proceedings.

MR. JUSTICE DAY and MR. JUSTICE KELLEY do not participate.