Gregory John OLINYK, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Harvey John KOSIK, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Levi MARTINEZ, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

Nos. 81SC64, 81SC170 and 81SC224.

Supreme Court of Colorado,
En Banc.

Feb. 8, 1982.

Tague & Beem, P. C., P. Arthur Tague, Anne Vitek, Denver, for petitioner, in No. 81SC64.

Malman & Malman, Jerome S. Malman, Ruth C. Malman, Denver, for petitioner, in No. 81SC170.

Hernandez, Schiferl & Martinez Hernandez, Michael A. Schiferl, Robert L. Hernandez, Pueblo, for petitioner in No. 81SC224.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review the decisions of the district courts of Moffat, Adams and Pueblo counties upholding the 55 mile-per-hour speed limit contained in section 42–4–1001(7)(b), C.R.S.1973 (1981 Supp.). The defendant in each case challenged his conviction on the basis that the 55 mile-per-hour speed limit is unenforceable because no penalty for violating the speed limit is provided in the statute. The three cases have been consolidated in this Court, and we affirm the district court judgment in each case.

The defendants, Gregory John Olinyk, Harvey John Kosik, and Levi Martinez, were each charged by complaint and summons with exceeding a posted 55 mile-per-hour speed limit. Defendant Olinyk allegedly was travelling 68 miles per hour, Kosik, 85 miles per hour, and Martinez, 70 miles per hour. In each case, the county court dismissed the complaint based on the defendant's argument that section 42–4–1001(7)(b) is unenforceable, and the district court reversed and reinstated the complaint. Because we determine that the penalty for violation of the maximum lawful speed is ascertainable, we affirm the rulings of the district courts that the defendants could be prosecuted for driving in excess of 55 miles per hour.

Prior to January 24, 1974, Colorado had no maximum lawful speed limit. Section 42–4–1001, C.R.S.1973 prohibited any person from driving "at a speed greater than is reasonable and prudent under the conditions then existing." Section 42–4–1001(2) provided: "Where no special hazard exists, the following speeds shall be lawful, but any speed in excess of said limits shall be prima facie evidence that the speed is not reasonable or prudent and that it is unlawful." Sections 42–4–1001(2)(a) through (e)

then listed the prima facie speed limits, the highest of which was 70 miles per hour. In November 1973, Congress enacted the Emergency Highway Energy Conservation Act, P.L. 93–239, 87 Stat. 1046 which limited the disbursement of federal highway funds to those states which enforce a maximum speed limit of 55 miles per hour.[1] Consequently, the Colorado General Assembly amended the traffic laws to include the maximum speed limit. *See* Colo.Sess.Laws 1974, ch. 36, 13–5–33 at 217; *People v. Driver*, 189 Colo. 276, 539 P.2d 1248 (1975). The current statutory provision establishing the limit is section 42–4–1001(7)(b), C.R.S. 1973 (1981 Supp.) which provides:

"Notwithstanding any other provisions of this section, no person shall drive a vehicle on a highway ... in excess of a maximum lawful speed of fifty-five miles per hour. Prima facie speed limits in excess of fifty-five miles per hour which were in existence prior to January 24, 1974, are hereby lowered to a maximum speed limit of fifty-five miles per hour. No speed limit shall be authorized above fifty-five miles per hour and all fifty-five-mile speed limits shall be considered maximum lawful speed limits and not prima facie speed limits."

The penalties for all traffic violations are contained in section 42–4–1501, C.R.S.1973 (1981 Supp.). Section 42–4–1501(3)(a)(I)(A) provides a schedule of fines for misdemeanor traffic offenses, including a fine of $25.00 for violation of the 55 mile-per-hour speed limit in section 42–4–1001, when the arresting officer issues a traffic offender a penalty assessment notice.[2] The arresting officer need not issue a penalty assessment notice to a traffic violator, but instead may issue a complaint and summons. Under section 42–4–1501(4)(c)(I), a complaint and summons *must* be issued when it appears that the violator exceeded the posted speed limit by more than 19 miles per hour; the violation caused or contributed to the cause of an accident resulting in property damage, injury, or death; or the driver committed two or more violations "in the course of the same transaction."

Section 1501(4)(c)(II) specifically states that in those cases where paragraph (c)(I) prohibits issuance of a penalty assessment notice, the schedule of fines contained in subsection (3), which mandates a $25.00 fine for violation of section 42–4–1001, is inapplicable. Instead, the provisions of section 42–4–1501(2) apply. Section 42–4–1501(2)(a) provides:

"Except as provided in subsections (3) and (4) of this section, misdemeanor traffic offenses are divided into four classes which are distinguished from one another by the following penalties which are authorized upon conviction:

| Class | Minimum Sentence | Maximum Sentence |
|---|---|---|
| 1 | Ten days imprisonment, or $100 fine, or both. | One year imprisonment, or $1000 fine, or both. |
| 2 | Ten days imprisonment, or $10 fine, or both. | Ninety days imprisonment, or $300 fine, or both. |

1. On January 2, 1975, Congress repealed the Emergency Highway Energy Conservation Act and reenacted the conditional funding restriction in the Federal Aid Highway Amendments of 1974, P.L. 93–643, 88 Stat. 2286. This enactment remains in force and is codified at 23 U.S.C. § 154 (1981 Supp.). It provides:

"National maximum speed limit. (a) The Secretary of Transportation shall not approve any project under section 106 in any State which has (1) a maximum speed limit on any public highway within its jurisdiction in excess of fifty-five miles per hour."

Other sections of the 1974 Amendments seek to guarantee enforcement of the 55 mile-per-hour maximum speed limit by requiring that data be submitted to the Transportation secretary on the percentage of motor vehicles exceeding 55 miles per hour. 23 U.S.C. § 154(e)–(i). *See* 1974 U.S.Code Cong. and Ad.News, p. 8011.

2. Under section 42–4–1501(4)(a), acceptance of a penalty assessment notice constitutes an acknowledgement of guilt and a promise to pay the fine provided by the schedule in section 42–4–1501(3)(a)(I)(A). Section 42–4–1501(4)(b) provides that if the violator fails to pay the prescribed penalty within 10 days, the notice shall be construed as a summons, and the case heard in the court of competent jurisdiction prescribed on the notice, with the maximum penalty not to exceed the penalty set forth in the fine schedule of subsection (3).

| Class | Minimum Sentence | Maximum Sentence |
|---|---|---|
| 3 | $5 fine. | $100 fine. |
| 4 | $5 fine. | $100 fine." |

To determine what class of misdemeanor a speeding violation would be, reference must be made to section 42–4–1001(7)(i), which classifies speeding offenses by the number of miles per hour by which the violator exceeds a prima facie speed limit. It provides:

"An offense of speeding one to nine miles per hour over the prima facie speed applicable is a class 3 traffic offense; an offense of speeding ten to nineteen miles per hour over the prima facie speed applicable is a class 3 traffic offense; an offense of speeding twenty miles per hour over the prima facie speed applicable is a class 2 traffic offense; and an offense under subsection (3) of this section is a class 3 traffic offense."

The defendants argue that since the classifications of section 42–4–1001(7)(i) apply by their terms to speeds exceeding "prima facie speed" limits, and since section 42–4–1001(7)(b) specifically states: "All fifty-five-mile speed limits shall be considered maximum lawful speed limits and *not prima facie limits*" (emphasis added), the classifications of subsection (7)(i) do not apply to violations of the 55 mile-per-hour speed limits. In other words, when a police officer issues a complaint and summons to a speeding offender, the fine schedule of section 42–4–1501(3)(a)(I) is inapplicable and the penalties provided in section 42–4–1501(2)(a) for various classes of offense govern. But, argue the defendants, since section 42–4–1001(7)(i) does not classify violations of section 42–4–1001(7)(b) because the 55 mile-per-hour speed limit is a maximum lawful limit and not a prima facie limit, it is not clear which, if any, of the penalties in section 42–4–1501(2)(a) is applicable. The defendants contend that the General Assembly's failure to provide a clear penalty for violation of the 55 mile-per-hour speed limit renders it unenforceable. We do not agree.

I.

A criminal statute must include a penalty for committing the acts proscribed, and a criminal prohibition without a penalty is unenforceable. *Airy v. People*, 21 Colo. 144, 40 P. 362 (1895); *State v. Ching*, Hawaii, 619 P.2d 93 (1980); *People v. Graf*, 93 Ill.App.2d 43, 235 N.E.2d 886 (1968); *State v. Fairlawn Service Center*, 20 N.J. 468, 120 A.2d 233 (1956). *W. LaFave & A. Scott, Handbook on Criminal Law* § 2, at 8 (1972). The requirement of a statutory penalty is based in part on the necessity of knowing that the legislature indeed intended to impose criminal sanctions for commission of an act. *See State v. Fairlawn Service Center, supra. See also People v. Boyd and Winkeller*, Colo., 642 P.2d 1 (1982) (S.Ct. No. 80SA267, announced February 8, 1982). It is also based on the separation of powers doctrine: for the judiciary to imply a penalty where the legislature did not expressly include one amounts to legislation by the courts. *United States v. Evans*, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948).

The General Assembly clearly intended to enact an enforceable 55 mile-per-hour maximum speed limit because maintenance of federal highway funding was contingent upon enactment of such a statute. Section 42–4–1001, C.R.S.1973 (1981 Supp.) expressly provides:

"(7)(a) It is declared to be the purpose of the General Assembly that the state of Colorado place itself in a position to receive its full share of funds to be apportioned by the Congress of the United States for expenditures on federal-aid highways in this state and to secure to all persons in this state the demonstrated benefits of the increased traffic safety and fuel conservation which may be inherent in any national uniform maximum speed limit."

In *People v. Driver*, 189 Colo. 276, 539 P.2d 1248 (1975), we recognized that a major legislative purpose in enacting the 55 mile-per-hour maximum speed limit was to prevent the forfeiture of federal highway funds which would have occurred in the absence of such a legislative enactment.

The conclusion that the General Assembly intended to enforce the 55 mile-per-hour speed limit through penal sanctions is reinforced by the background to the present penalty scheme. The 1974 legislation which enacted the 55 mile-per-hour speed limit provided:

"(7)(i) Every person convicted of driving a vehicle in excess of the maximum speed limit specified in this subsection (7) is guilty of a misdemeanor and, upon conviction thereof, shall be punished as provided in section 13–5–130."

Colo.Sess.Laws 1974, ch. 36, 13–5–33 at 217, 218. C.R.S.1963, 13–5–130(3)(a), in effect at the time, contained a schedule of fines which mandated a $25 fine for violation of all speed limits, including the 55 mile-per-hour speed limit, charged by penalty assessment. For violations to which the fine schedule did not apply, a "catch-all" penalty provision, C.R.S.1963, 13–5–130(2)(a), provided:

"Every person convicted of a misdemeanor for the violation of any of the provisions of this chapter for which another penalty is not provided by subsection (3) of this section, or by any other section of this chapter, shall, upon the first conviction thereof, be punished by a fine of not less than ten nor more than one hundred dollars or by imprisonment for not more than ten days."

In 1975, the General Assembly repealed and reenacted the statutory provisions concerning traffic offenses, placing the 55 mile-per-hour speed limit in section 42–4–1001(7)(b). Section 42–4–1001(7)(b) contains no reference to a specific penalty provision for violation of the maximum speed limit. Instead, the fee schedule of section 42–4–1501(3)(a)(I) is made applicable to violations of section 42–4–1001 charged by penalty assessment notice, and the classified penalties of section 42–4–1501(2)(a) to violations of section 42–4–1001 charged by complaint and summons. Section 42–4–1501(2)(a) replaced the general saving penalty set forth in C.R.S.1963, 13–5–130(2)(a). The explicit reference at the time the maximum speed limit was enacted to applicable penalty provisions indicates the General Assembly's intent to punish violations of the 55 mile-per-hour limit. Only through the replacement in 1975 of the saving penalty with a penalty based on classifications was confusion created as to the penalty applicable to violations of the maximum speed limit charged by complaint and summons.

When the legislature "has exhibited clearly the purpose to proscribe conduct within its power to make criminal and has not altogether omitted provision for penalty, every reasonable presumption attaches to the proscription to require the courts to make it effective in accord with the evident purpose." *United States v. Evans, supra* 333 U.S. at 486, 68 S.Ct. at 636. *See* section 2–4–201, C.R.S.1973; *People v. Driver, supra; People v. Sneed,* 183 Colo. 96, 514 P.2d 776 (1973); *Murray v. Hobson,* 10 Colo. 66, 13 P. 921 (1887). Statutes should be construed according to the aims meant to be accomplished by them, *People v. Driver, supra; Murray v. Hobson, supra,* and the rule of strict construction of penal statutes should not be used to defeat the obvious intention of the legislature. *United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37, 42 (1820); *People v. Meyers,* 182 Colo. 21, 510 P.2d 430 (1973). Here, it was obviously the intention of the General Assembly to enact a maximum speed limit enforceable through penal sanctions.

## II.

We next look to the statutory scheme for traffic offenses to ascertain the penalty applicable to violation of the 55 mile-per-hour speed limit.

The enactment of the maximum speed limit did not alter the speed limits in section 42–4–1001(2) which are below 55 miles per hour. Exceeding these lower speed limits is considered prima facie evidence of unreasonable or imprudent speed. Prima facie evidence is evidence which alone is sufficient to convict unless contradicted by other evidence. 29 *Am.Jur.2d Evidence* § 4, at 38 (1970). The effect of proof that a driver exceeded a prima facie speed limit is to raise a rebuttable presump-

tion that the driver's speed exceeded what was reasonable or prudent under the circumstances. *State v. Rich*, 115 Ariz. 119, 563 P.2d 918 (App.1977). If, however, the driver's speed is the only evidence submitted by the prosecution, and the defendant submits evidence sufficient to rebut the presumption of unreasonableness, a court may rule that a defendant's speed, while in excess of the posted speed limit, was legal under the circumstances existing at the time. *State v. Trimming*, 89 Idaho 440, 406 P.2d 118 (1965) (75 miles per hour in a 60 mile-per-hour zone not unreasonable or imprudent). *See People v. Gallegos*, 188 Colo. 245, 533 P.2d 1140 (1975) (district court ruled that evidence did not support beyond a reasonable doubt that 80 miles per hour in a 70 mile-per-hour zone was unreasonable under all circumstances).

A maximum prima facie limit of 55 miles per hour would not necessarily have accomplished the purpose of maintaining Colorado's eligibility for federal highway funds. A prima facie limit, while creating a presumption that a speed in excess of the posted limit is not safe or prudent, would allow an alleged offender to present evidence showing that his speed was safe and prudent under the circumstances. *People v. Gallegos, supra; State v. Rich, supra; State v. Trimming, supra.* Because federal law forbids disbursement of federal highway funds to any state with "a maximum speed limit on any public highway within its jurisdiction in excess of fifty-five miles per hour," 23 U.S.C. § 154 (1981 Supp.), the General Assembly believed it necessary to eliminate the possibility of a person being able to show that operating a vehicle above 55 miles per hour was safe, and therefore not unlawful. This is clearly the intent behind that portion of section 42–4–1001(7)(b) which reads:

"[A]ll fifty-five-mile speed limits shall be considered maximum lawful speed limits and not prima facie speed limits."

█ The distinction made by the General Assembly between 55 mile-per-hour maximum speed limits and all other, prima facie speed limits, is tied to the legislative pur-

pose of securing federal funding made conditional by federal statute upon enactment of a 55 mile-per-hour *maximum speed limit.* That the General Assembly did not intend to distinguish the maximum speed limit from other posted speed limits except for this one purpose may be inferred from the General Assembly's 1975 amendment of the speed laws, which led to the penalty ambiguity in the first place. The original provision enacting the 55 mile-per-hour speed limit in 1974 stated:

"The purpose of this subsection (7) is to conserve fuel during periods of current and imminent fuel shortages through the establishment of a maximum highway speed limit and to comply with the federal 'Emergency Highway Energy Conservation Act.'"

Colo.Sess.Laws 1974, ch. 36, 13–5–33 at 217. This statement of purpose contained no mention of the enhancement of highway safety which a 55 mile-per-hour speed limit might also effect.

When the General Assembly reenacted the 55 mile-per-hour limit in 1975, however, it expressed a recognition of the "demonstrated benefits of the increased traffic safety ... inherent in any national uniform maximum speed limit." Section 42–4–1001(7)(b), C.R.S.1973 (1981 Supp.). This new statement of purpose evidences the General Assembly's intent to incorporate the maximum speed limit into the statutory scheme for punishment of all speeding offenses, and to treat a violation of any speed limit as prima facie unsafe for purposes of penalty, but to consider exceeding the 55 mile-per-hour limit as conclusively unlawful to insure federal funding.

█ Therefore, in cases where the offender is issued a complaint and summons, section 42–4–1001(7)(i), which classifies speeding offenses by the number of miles per hour by which the violator exceeds a prima facie speed limit, is applicable as well to offenders exceeding the 55 mile-per-hour maximum speed limit. Having determined the classification of the offense under section 42–4–1001(7)(i) for violation of the 55 mile-per-hour speed limit, it is then possible to determine the applicable sentence under section 42–4–1501(2)(a) which sets out the

different classes of misdemeanor traffic offenses.

Where, as here, an apparent ambiguity in a statute may be clarified by referring to the evident legislative intent behind its enactment, it is within the judicial power to determine the applicable penalty. *Cf. United States v. Evans, supra.*[3] Since the penalty applicable to violation of the 55 mile-per-hour speed limit charged by complaint and summons is ascertainable, the speed limit is enforceable.

Judgments affirmed.

---

**3.** In *Evans,* the United States Supreme Court struck down a conviction under 8 U.S.C. § 1324 (1907), which prohibited the smuggling of aliens into the United States. The statute was amended in 1917 to prohibit the concealing or harboring of aliens as well, but no sanctions were prescribed for the added offenses. The Supreme Court held that where there were four distinct possible interpretations of the applicable penalty, and where the legislative history was "neither clear nor greatly helpful in ascertaining which of the possibilities calling for punishment was the one Congress contemplated," the court was not in a position to decide which was the applicable remedy.