The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Keith Patrick SPROWL, Defendant-Appellee.

The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Devannie Maryann LUBBEN and Ramon Munoz, Defendants-Appellees.

The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Gene ANTONUCCI, Jr.; Michael Larry Antonucci; Karen Chavis; Louis Farina; Mitzi Hatfield; Brenda Hatfield; Alvin Clenton Hatfield; Sherrie Lou Phurrough; Albert Anthony Ursetta; Toni Tadolini; Daniel Anthony Shakin; David Charles Martinez; Julian Marc Duran; Michael James Antonucci; Robert Paul Coalson; Veronica Ann Coalson; Michael Lynn Gettman; Gerald Henry Freauff; Edmund Dominic Couch; Vernon Rudolf Gutierrez; and Vikki Ann Miller, Defendants-Appellees.

Nos. 85SA426, 85SA466 and 85SA473.

Supreme Court of Colorado,
En Banc.

May 12, 1986.

Norman S. Early, Jr., Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy, Clifford R. Cronk, III, Sp. Deputy Dist. Atty., and David L. Saine, Asst. Atty. Gen., Denver, for plaintiff-appellant.

Eldridge & Lindstrom, Wade H. Eldridge and Susan A. Lupton, Denver, for defendant-appellee Keith Patrick Sprowl.

Joseph Saint-Veltri, Denver, for defendant-appellee Gene Antonucci, Jr.

Emerson Semple, Denver, for defendant-appellee Michael Larry Antonucci.

Tone T. Schauer, Boulder, for defendant-appellee Karen Chavis.

Stephen A. Jones, Lakewood, for defendant-appellee Louis Farina.

Schoenwald, Burke & Naves, Larry J. Naves, Denver, for defendant-appellee Mitzi Hatfield.

Fogel, Keating & Wagner, P.C., Steven Polidori, Denver, for defendant-appellee Brenda Hatfield.

Jeffrey R. Springer, P.C., Thomas A. Ballantine, III and Harvey A. Steinberg, Denver, for defendant-appellee Alvin C. Hatfield.

Jeffrey R. Edelman, Denver, for defendant-appellee Sherrie Lou Phurrough.

Abelman & Abelman, Allan David Abelman and Robert C. Abelman, Denver, for defendant-appellee Toni Tadolini.

Jeralyn E. Merritt, Denver, for defendant-appellee Daniel Anthony Shakin.

Thomas H. May, Denver, for defendant-appellee David C. Martinez.

David F. Vela, Colorado State Public Defender, and Karen M. Ashby, Deputy State Public Defender, Denver, for defendant-appellee Robert Coalson.

Joyce Seelen, Denver, for defendant-appellee Veronica Coalson.

James L. Hammer, Englewood, for defendant-appellee Michael Lynn Gettman.

Robert Lynn Taylor, Denver, for defendant-appellee Gerald Henry Freauff.

Steven R. Newell and Steven P. Martens, Denver, for defendant-appellee Edmund Dominic Couch.

James B. Breese, Denver, for defendant-appellee Vikki Ann Miller.

VOLLACK, Justice.

The People appeal from a district court order suppressing evidence obtained through the use of an ex parte wiretap pursuant to section 16–15–102(1)(a)(VI), 8 C.R.S. (1978 and 1985 Supp.). The court also ruled that the entry into a defendant's residence was an illegal search and suppressed all evidence obtained from the entry and any evidence obtained thereafter as the unlawful fruits of the entry. We reverse in part and remand for further proceedings.[1]

## I.

On April 3, 1985, the Colorado Attorney General's office submitted an application and affidavit for authorization to intercept wire communications for a certain telephone number to the Denver District Court. The affidavit detailed agents Richard Halpin and Thomas Hayes' ongoing and lengthy investigation into the suspected drug-related activities of numerous individuals, including the defendants.

On the same day, the court issued an order authorizing agents of the Lakewood Department of Public Safety, United States Drug Enforcement Administration, Colorado Attorney General's office, and other law enforcement officers participating in the investigation of the matter set forth in the affidavit, to intercept by wiretap communications on the telephone located in Denver, Colorado.

The court found there was probable cause to believe that the individuals named in the affidavit, including the defendants, had committed, were committing, and were about to commit "violations of the following statutes: section 18–18–104 through 18–18–109, C.R.S. (1973 and 1984 Supp.)

(offenses relating to controlled substances); section 12–22–301 through 12–22–322, C.R.S. (1973 and 1984 Supp.) (Colorado Controlled Substances Act); and section 18–2–201, C.R.S. (1973) (criminal conspiracy to commit the aforementioned crimes)." On April 17, 1985, agents Halpin and Hayes submitted an affidavit in support of search and arrest warrants to the Denver District Court. The affidavit contained information primarily derived from the authorized wiretap. Arrest warrants were issued for a number of individuals, including defendants Keith Patrick Sprowl and Sherrie Phurrough.

On April 24, 1985, agent Gregory Bramblett of the Lakewood Department of Public Safety went to defendant Sprowl's residence at 3869 Osceola Street, Denver, Colorado, to execute the arrest warrant. Bramblett noticed a car, which he believed was owned by Phurrough, in the vicinity of Sprowl's residence. Bramblett knocked on the front door of Sprowl's residence. When Sprowl opened the door, Bramblett identified himself and informed Sprowl that he wished to speak to him. Sprowl agreed, but before he spoke with Bramblett, he walked throughout the house, closing doors. Sprowl then stepped out of the front door and closed it behind him. Bramblett arrested Sprowl and then entered the house to determine whether Sherrie Phurrough was in the residence. Bramblett suspected Phurrough was in the house because of the car near Sprowl's house and because of Sprowl's unusual conduct in closing all of the doors, which he interpreted as an effort on the part of Sprowl to conceal something or some person.

Once inside the house, Bramblett observed a large trash can with marijuana leaves on top of it, and he heard what he thought was a pump fan operating in the basement. He informed agents Hayes and Halpin of this information. They sub-

---

**1.** The People filed an interlocutory appeal of this suppression order in *People v. Sprowl,* 85SA426, on November 25, 1985. Subsequently, on December 13, 1985, the trial court joined defendants Lubben and Munoz in the suppression order, and the People appealed in *People v.*

*Lubben,* 85SA466. Then, on December 20, 1985, the trial court joined approximately eighteen more defendants in the suppression order, and the People again appealed in *People v. Antonucci,* 85SA473. We consolidated the three cases on January 8, 1986.

mitted a supplemental affidavit, incorporating the observations of agent Bramblett, and obtained a search warrant for Sprowl's residence. Pursuant to the search warrant, marijuana contraband was recovered from Sprowl's residence.

The Denver District Attorney's office filed a fifty-seven count information and complaint, alleging that numerous individuals, including the defendants, were involved in drug-related activities. Prior to trial, Sprowl moved to suppress evidence derived from the wiretap authorized on April 3, 1985. The trial court granted Sprowl's motion to suppress.

While the court found that probable cause existed in the affidavit of April 3, 1985, to believe that Sprowl and the other defendants did commit or were about to commit a crime under section 18–18–105, 8 C.R.S. (1985 Supp.), it concluded that section 16–15–102(1)(a)(VI), 8 C.R.S. (1978 and 1985 Supp.) (ex parte order for wiretapping and eavesdropping), applied only to felony violations under Title 12, and not to any narcotic- or drug-related offenses under Title 18. Accordingly, the court concluded that, since no probable cause existed in the aforementioned affidavits to believe that the defendants were involved in felony violations of specific Title 12 criminal offenses, the wiretap order of April 3, 1985, was issued without authorization. Further, the court ruled that the good-faith exception to the exclusionary rule did not apply under these facts.

The court also found that agent Bramblett's entry into Sprowl's residence constituted a search, and that no exigent circumstances existed to justify the warrantless entry of the home. The trial court's findings were based upon the subsequent affidavit by agents Hayes and Halpin for a search warrant which was issued on April 24, 1985. The court heard no additional evidence. It concluded that, without the information obtained in the illegal search of Sprowl's residence by agent Bramblett, the affidavit for the search warrant of Sprowl's residence lacked probable cause

and any evidence obtained from that search must be suppressed.

We reverse the trial court's ruling which suppressed evidence obtained from wiretaps authorized on April 3, 1985. We remand for further proceedings on the question of whether the warrantless entry of Sprowl's residence by agent Bramblett was illegal and whether evidence obtained from the subsequent search of Sprowl's residence pursuant to a warrant should be suppressed as the illegal fruits of Bramblett's initial entry.

## II.

■ The trial court ruled that section 16–15–102(1)(a)(VI), 8 C.R.S. (1978 and 1985 Supp.), does not apply to any narcotic- or drug-related offenses under Title 18. We disagree.

The applicable portion of the wiretapping and eavesdropping statute reads:

16–15–102. **Ex parte order for wiretapping and eavesdropping.** (1)(a) An ex parte order for wiretapping or eavesdropping, or both, as those offenses are described in section 18–9–302 to 18–9–304, C.R.S. 1973, may be issued by any judge of competent jurisdiction of the State of Colorado upon application of the Attorney General or a district attorney, showing by affidavit that there is probable cause to believe that evidence will be obtained of the commission of any one of the crimes enumerated in this section (1) or that one of the said enumerated crimes will be committed:

. . . .

(VI) *Dealing* in controlled substances as covered by part 3 of Article 22 of Title 12, C.R.S., *as such offenses are subject to prosecution as felonies . . . .*

(emphasis added).

■ The principal basis for the trial court's ruling was its interpretation of the word "dealing" contained in section 16–15–102(1)(a)(VI). It stated that "dealing" had no meaning because it was not defined by statute. We disagree.

Statutory terms are generally given effect according to their plain meaning. *Clark v. Town of Estes Park*, 686 P.2d 777 (Colo.1984). Words of a statute must be read and considered in the context of the section as a whole and in the context of other relevant portions. *Allen v. Charnes*, 674 P.2d 378 (Colo.1984). The wiretap statute is interrelated with several other sections, and, therefore, the meaning of its terms must be viewed in light of the related provisions.

Cocaine, the controlled substance involved here, is classified as a Schedule II controlled substance under section 12–22–310(1)(a)(V), 5 C.R.S. (1985). Section 12–22–314(1)(b) provides that the "dispensing of any Schedule II controlled substance" is unlawful "unless such substance is dispensed from a pharmacy pursuant to a written prescription or is dispensed by any practitioner in the course of his professional practice." The term "dispense" is defined in section 12–22–102(9) as meaning "to prepare a drug or device pursuant to a lawful prescription order of a practitioner, together with an appropriate label, in a suitable container for subsequent administration to or use by a patient or other individual entitled to receive the prescription order." While the statutory definition of "dispense" refers to the pharmacological preparation of controlled substances, the word's use in the context of section 12–22–314(1)(b) clearly envisions a broader meaning. In the definition section, "dispense" is the lawful preparation of a controlled substance by a pharmacist. In section 12–22–314(1)(b), however, "dispense" refers to unlawful conduct by persons other than pharmacists. That section uses the word in a broader sense, meaning to deal in or with a controlled substance. *See* Webster's Third New International Dictionary 653 (dispense) and 660 (distribute) (3d ed. 1976). It should be emphasized that section 12–22–102 prefaces the definition section with a statement that the definitions of part 1 are to be used as defined, "unless the context otherwise requires." The trial court's narrow definition of the word "dealing" as used in section 16–15–102(1)(a)(VI), ne-

glects to recognize that "dealing" is embraced within the broader definition of the word "dispense" as it is used in section 12–22–314(1)(b).

Moreover, section 12–22–314(1)(b) applies to the felony offenses relating to controlled substances enumerated in section 18–18–105, 8 C.R.S. (1985 Supp.). Section 12–22–314(2.5), 5 C.R.S. (1985), states:

Any person who violates paragraph ... (b) ... of subsection (1) of this section [12–22–314] shall be punished as provided for in section 18–18–105 ... C.R.S.

Sections 18–18–101 to 109, 8 C.R.S. (1985 Supp.), pertain to offenses relating to controlled substances. Section 18–18–105, 8 C.R.S. (1985 Supp.), pertains to the unlawful distribution, manufacturing, *dispensing*, sale or possession of a controlled substance. The applicable portion of section 18–18–105 for the purposes of the present issue reads:

(1)(a) Except as authorized by Part 3 of Article 22 of Title 12, C.R.S., it is unlawful for any person knowingly or intentionally to ... dispense ... a controlled substance.

(b) As used in this subsection (1), "dispense" does not include labeling as defined in section 12–22–102(16), C.R.S.

. . . .

(2) ... Any person who violates any of the provisions of subsection (1) of this section:

(a) In the case of a controlled substance listed in Schedule ... II of Part 3 of Article 22 of Title 12, C.R.S., commits:

(I) a class 3 felony; or

(II) a class 2 felony, if the violation is committed subsequent to a prior conviction for a violation to which this paragraph (a) applies.

The affidavit of April 3, 1985, and the plain language of Title 12 satisfy the wiretap requirement in section 16–15–102(1)(a)(VI) that the offense alleged in Title 12 be subject to prosecution as a felony. The trial court erred in its construction of the above provisions. We reverse its rul-

ing that section 16–15–102(1)(a)(VI), 8 C.R.S. (1978 and 1985 Supp.), applies only to felony offenses in Title 12 and that it does not apply to the narcotic- and drug-related activities set forth in sections 18–18–101 to 109, 8 C.R.S. (1985 Supp.).

### III.

■ The People next argue that the trial court erred in ruling that the warrantless search of Sprowl's residence was illegal and that the subsequent evidence obtained from that search was fruit of the poisonous tree. They contend there were sufficient exigent circumstances for agent Bramblett to have entered Sprowl's residence. Because no evidentiary hearing was held on the suppression of the warrantless entry, we remand the issue to the trial court for an evidentiary hearing on whether Bramblett's initial entry into Sprowl's residence was constitutional.

Accordingly, we reverse in part and remand for further proceedings.

DUBOFSKY, J., specially concurs in part.

LOHR and KIRSHBAUM, JJ., join in special concurrence.

DUBOFSKY, Justice, specially concurring in part:

I agree with the majority opinion that the district court erred in ruling that section 16–15–102(1)(a)(VI), 8 C.R.S. (1978 & 1985 Supp.), did not apply to the narcotic- and drug-related activities set forth in sections 18–18–101 to –109, 8 C.R.S. (1985 Supp.), but the basis for my conclusion is that the General Assembly clearly intended to allow wiretaps based on probable cause to believe that there was a violation of sections 18–18–101 to –109. I therefore specially concur with part II of the majority opinion.

The applicable portion of the wiretapping and eavesdropping statute provides as follows:

(1)(a) An ex parte order for wiretapping or eavesdropping, or both, as those offenses are described in sections 18–9–302 to 18–9–304, C.R.S. 1973, may be issued by any judge of competent jurisdiction of the state of Colorado upon application of the attorney general or a district attorney, showing by affidavit that there is probable cause to believe that evidence will be obtained of the commission of any one of the crimes enumerated in this subsection (1) or that one of the said enumerated crimes will be committed:

. . . .

(VI) *Dealing* in controlled substances as covered by part 3 of article 22 of title 12, C.R.S., *as such offenses are subject to prosecution as felonies. . . .*

§ 16–15–102(1)(a)(VI), 8 C.R.S. (1978 & 1985 Supp.) (emphasis added). I agree with the implication in the majority opinion, at 527–528, that the word "dealing" in section 16–15–102(1)(a)(IV) describes the alleged unlawful conduct in this case. In interpreting statutory language, courts give effect to the plain meaning of the words used by the General Assembly. *People v. Deadmond,* 683 P.2d 763 (Colo. 1984). In this case, "deal" means "to do a retailing or distributing business" or to "trade or traffic" in or with a controlled substance. *See Webster's Third New International Dictionary* 581 (3d ed. 1976). However, unlike the majority, I would not equate "dealing" with "dispense" in section 12–22–102(9) or 12–22–314(1)(b), 5 C.R.S. (1985), in order to allow a wiretap pursuant to section 16–15–102(1)(a)(VI) to aid investigation of the narcotic- and drug-related activities prohibited by sections 18–18–101 to –109.[1] Rather, I would find that, despite the language in section 16–15–102(1)(a)(VI) referring to "part 3 of article 22 of title

---

**1.** The definitions section for part 3 of article 22 of title 12, section 12–22–303(11), 5 C.R.S. (1985), states that "dispense" shall have the same meaning as set forth in section 12–22–102(9), 5 C.R.S. (1985). Section 12–22–102(9) defines "dispense" as meaning "to prepare a drug or device pursuant to a lawful prescription order of a practitioner, together with an appropriate label, in a suitable container for subsequent administration to or use by a patient or other individual entitled to receive the prescription order."

12," which applies to pharmacists, the General Assembly has clearly intended since 1971 that the wiretapping and eavesdropping statute apply to the unlawful conduct proscribed by sections 18–18–101 to –109.

A court's primary task in construing a statute "is to discern the intent of the General Assembly." *Engelbrecht v. Hartford Accident and Indemnity Co.*, 680 P.2d 231, 233 (Colo.1984). While the general rule is that criminal statutes are to be strictly construed, "the rule of strict construction of penal statutes should not be used to defeat the obvious intention of the legislature." *Olinyk v. People*, 642 P.2d 490, 494 (Colo.1982). In this case, therefore, the court should attempt to make the statute effective in accord with its legislative purpose even though the replacement or reenactment of sections may have created confusion. *Id.*

Despite the problems caused by recodification and amendment to the statutes, the legislature clearly intended the wiretap statute to apply to offenses set forth in sections 18–18–101 to –109. The General Assembly enacted section 39–24–2, the original version of section 16–15–102, in 1971 with an effective date of July 1, 1972. Ch. 121, sec. 2, 1971 Colo. Sess. Laws 388, 486–490. The statute noted that a wiretapping or eavesdropping order could be obtained whenever there was "probable cause to believe that evidence may be obtained" of the commission of a list of crimes or violation of section 48–5–20, which at that time prohibited the possession for sale, sale, dispensing, or inducing or attempting to induce others to administer or unlawfully transport, carry, dispense, manufacture or use narcotic drugs. C.R.S. 1963, 48–5–20(1)(a).

In 1972, the General Assembly amended the wiretapping and eavesdropping statute to list separately each crime to which the statute applied, including " '[d]ealing in narcotic or other dangerous drugs' as covered by sections 48–5–20 and 48–8–10, C.R.S. 1963." Ch. 45, sec. 1, § 39–24–2, 1972 Colo. Sess. Laws 269, 269–270. Section 48–5–20 still contained the prohibitions against dealing in narcotic drugs, while 1969 Perm. Supp., C.R.S. 1963, 48–8–10 provided penalties for dealing in dangerous drugs. During the revisions of C.R.S. 1973, the wiretapping and eavesdropping statute became section 16–15–102, 8 C.R.S. (1973). The enumerated crimes covered by the statute included "[d]ealing in narcotic or other dangerous drugs as covered by sections 12–22–322 and 12–22–412." § 16–15–102(1)(a)(VI), 8 C.R.S. (1978). Section 12–22–322, 5 C.R.S. (1978), included the prohibitions and penalties for dealing in narcotic drugs of section 48–5–20. Section 12–22–412, 5 C.R.S. (1978), included the prohibitions and penalties for dealing in dangerous drugs of section 48–8–10.

In 1981 the General Assembly repealed the statutes concerning narcotic drugs and reenacted the statutes with amendments, entitling the new part "Controlled Substances." Ch. 128, sec. 1, 1981 Colo. Sess. Laws 707, 707–28. The General Assembly also repealed the statutes concerning dangerous drugs, *id.*, sec. 39, at 741, and at the same time, added article 18 of title 18, entitled "Offenses Relating to Controlled Substances," to the criminal code. *Id.*, sec. 2, at 728–34. As a result of these changes, "narcotic drugs" and "dangerous drugs" ceased to exist and in their place the legislature enacted statutes concerning "controlled substances" and "narcotic controlled substances." *See* § 12–22–303(7), (19), 5 C.R.S. (1985).[2] The General Assem-

---

**2.** Section 12–22–301(16), 5 C.R.S. (1978), defined "narcotic drugs" as coca leaves, opium, coca or opium derivatives, and any other drug except cannabis that the federal Controlled Substances Act of 1970 deemed a narcotic drug. Section 12–22–303(19), 5 C.R.S. (1985), now defines a "narcotic controlled substance" as opium, an opiate, or an opium equivalent. Section 12–22–403(4), 5 C.R.S. (1978), defined "dan-

gerous drug" as "cannabis, cannabis concentrate, or any depressant drug, hallucinogenic drug, stimulant drug, or tranquilizer" or any such mixture. Section 12–22–303(7), 5 C.R.S. (1985), now defines a "controlled substance" as a substance or its precursor defined by part 3. Section 12–22–309 declares the following to be controlled substances: marijuana, marijuana concentrates, cocaine, opium, opiate derivatives,

bly then amended section 16–15–102(1)(a)(VI), deleting the reference to narcotic or other dangerous drugs and inserting "controlled substances" and a reference to "part 3 of article 22 of title 12." Ch. 128, sec. 19, 1981 Colo. Sess. Laws 707, 737. These changes also separated the listing of controlled substances and provisions for licensing those who dispense the controlled substances, §§ 12–22–301 to –322, 5 C.R.S. (1985), from the provisions governing offenses related to controlled substances. §§ 18–18–101 to –109.

It is therefore clear that, from the very first version of the wiretapping and eavesdropping statute in 1971, the legislature intended wiretapping and eavesdropping orders to be available to aid in the investigation into the sale of narcotic and dangerous drugs. The fact that the General Assembly neglected to refer to sections 18–18–101 to –109 in section 16–15–102(1)(a)(VI) does not bar a court from granting a wiretapping or eavesdropping order when there is probable cause to believe there is a violation of sections 18–18–101 to –109, where the legislature for ten years has intended that wiretapping and eavesdropping orders be granted for drug-related activities. The legislature's reference to "controlled substances" in section 16–15–102(1)(a)(VI) indicates that it intended that courts continue to grant wiretapping and eavesdropping orders for investigation into offenses covered by sections 18–18–101 to –109, and the reference in section 16–15–102(1)(a)(VI) to "part 3 of article 22 of title 12" should not be used to defeat the obvious intention of the legislature. *Cf. Olinyk v. People*, 642 P.2d 490. On this basis I would reverse the district court's ruling that section 16–15–102(1)(a)(VI) does not apply to the narcotic- and drug-related activities set forth in sections 18–18–101 to –109.

Accordingly, I concur with the result in part II of the majority opinion.

I am authorized to say that Justice LOHR and Justice KIRSHBAUM join this special concurrence.

stimulants, depressants, and narcotic controlled substances.