The PEOPLE of the State of
Colorado, Petitioner,

v.

Dean Raymond PETERSON,
Respondent.

No. 85SC150.

Supreme Court of Colorado,
En Banc.

March 23, 1987.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John Milton Hutchins, First Asst. Atty. Gen., Denver, for petitioner.

Thoburn G. Cleaver III, Mark T. Langston, Boulder, for respondent.

VOLLACK, Justice.

The People appeal the district court's reversal of a speeding conviction from the Summit County Court. The respondent was convicted of violating section 42–4–1001, 17 C.R.S. (1984), by traveling over the posted speed limit of twenty-five miles per hour for trucks weighing 10,000 pounds or more, gross vehicle weight. On appeal, the district court held that the State Department of Highways [hereinafter the Department] was without authority to post the special speed limit because section 42–4–1002(1), 17 C.R.S. (1984) [hereinafter section 42–4–1002(1)], did not grant such authority. Because we find that section 42–4–1002(1) does allow for the imposition of more than one speed limit on a state highway or segment thereof, and that such delegation of authority by the General Assembly to the Department is not improper under section 42–4–1002(1), we reverse.

## I.

The respondent, Dean Raymond Peterson, was charged with traveling fifty-five miles per hour in a posted twenty-five miles per hour zone, on May 31, 1982, while traveling west on Interstate 70, three miles east of Silverthorne, Summit County, Colorado. The respondent was driving a 1979 Freightliner with semi-trailer, weighing approximately 60,000 pounds. The section of Interstate 70 in question is known as Straight Creek, and begins just west of the Eisenhower Tunnel. Straight Creek has a downgrade of approximately 7%, higher than normally allowed for a highway.

A traffic engineer for the Department testified, at a hearing on the respondent's motion to dismiss the charges, that Straight Creek was of concern to the Department soon after the Eisenhower Tunnel opened. The Department gathered accident data on Straight Creek during a three year period covering January 1975 to June 1978. The study showed that while trucks accounted for 10% of the traffic on Straight Creek, they were involved in 14% of the accidents in that area. According to the engineer, a rash of accidents involving trucks during the first six months of 1978, together with a speed study performed by the traffic engineer in which he personally observed the traffic flow on Straight Creek during an eight hour period, led the Department to reduce the speed limit at Straight Creek to twenty-five miles per hour for trucks over 10,000 pounds, gross vehicle weight. The special speed limit was applicable to approximately five and one-half miles of Interstate 70. In addition to the reduction of the speed limit, the Department also constructed two truck escape ramps to be used in an emergency by trucks that were out of control and unable to stop. The speed limit was originally reduced on a one year probationary basis, subject to reevaluation. The traffic engineer testified that reevaluation showed no reason to change the speed limit. The speed reduction on Straight Creek did not apply to recreational vehicles or buses in excess of 10,000 pounds, gross vehicle weight.

The respondent moved to dismiss the charges against him on the grounds that section 42-4-1002(1) lacked adequate legislative standards to guide administrative agencies and therefore was an improper delegation of legislative authority. The county court denied the respondent's motion for dismissal, finding that the legislature delegated to the Department the authority to set the varying speed limits, where studies were done before the action was taken. The trial court further held that the separate speed limit for trucks over 10,000 pounds, gross vehicle weight, was not arbitrary or capricious, and was presumed valid. The respondent was convicted of the violation charged and sentenced to a $50 fine and one day in jail.

The respondent appealed to the district court of Summit County, which reversed his conviction. The district court held that the Department had no authority to set multiple limits under section 42-4-1002(1), and further that the statute provided no standards to address different vehicle types or weights that might bear on safety. In addition, the district court found that the Department acted arbitrarily with respect to the speed limit of twenty-five miles per hour and the vehicle weight of 10,000 pounds, finding no correlation between speed or vehicle weight and accidents in the studies given as evidence. The district court held that although the statute in question was not invalid, the Department's action thereunder was invalid and therefore the conviction was reversed. The People bring this appeal.

## II.

The first issue we address is whether the language of section 42-4-1002(1) authorizes the Department to establish multiple speed limits for specific classes of vehicles, such as those weighing 10,000 pounds or more. Section 42-4-1002 states in pertinent part:

> **Altering of speed limits—when.** (1) Whenever the state department of highways determines upon the basis of a traffic investigation or survey or upon the basis of appropriate design standards

and projected traffic volumes in the case of newly constructed highways or segments thereof that any speed specified or established as authorized under sections 42–4–1001 to 42–4–1004 is greater or less than is reasonable or safe under the road and traffic conditions at any intersection or other place or upon any part of a state highway under its jurisdiction, said department shall determine and declare a reasonable and safe speed limit thereat which shall be effective when appropriate signs giving notice thereof are erected at such intersection or other place or upon the approaches thereto; except that no speed limit in excess of fifty-five miles per hour shall be authorized by said department for so long as the state maximum speed limit of fifty-five miles per hour is in effect pursuant to section 42–4–1001.

§ 42–4–1002(1), 17 C.R.S. (1984).

The district court narrowly interpreted section 42–4–1002(1) to apply only to the setting of one speed limit for a specific segment of public highway, holding that the Department had no authority to set multiple speed limits applicable to different vehicle types. We find the district court's interpretation unnecessarily narrow, and therefore hold that section 42–4–1002(1) allows the Department to set multiple speed limits applicable to various vehicle types or weights on a specific segment of a state highway if necessary to ensure safety on the state highways.

Section 42–4–1002(1) refers to the declaration of a reasonable and safe "speed limit." However, a literal interpretation of terms and words used in a statute will not prevail where such an interpretation would be contrary to the intention of the framers. *People v. Driver*, 189 Colo. 276, 539 P.2d 1248 (1975). A statute should not be construed in such a way as to defeat the obvious legislative intent, and in ascertaining that intent it is permissible to take into consideration the necessity for the law and the remedy. *Id.* at 279, 539 P.2d at 1251. An examination of section 42–4–1002(1) makes clear that its purpose is to safeguard the public from unsafe highway conditions. By enacting section 42–4–1002, the General Assembly authorized the Department to conduct traffic investigations and studies on traffic conditions and to determine what a safe speed limit should be, based upon those studies. *See* § 42–4–1002(1). If the Department's studies determine that a reasonable and safe speed for one type of vehicle is not a reasonable and safe speed for another type of vehicle, then the setting of different speed limits for different vehicle types is consistent with the legislative intent of section 42–4–1002(1).

In addition, construction of a statute by administrative officials charged with its enforcement is to be given deference by the courts. *City and County of Denver v. Industrial Comm'n*, 690 P.2d 199 (Colo. 1984); *Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976). Therefore, we hold that section 42–4–1002(1) provides for the setting of more than one speed limit on a certain segment of public highway if the Department of Highways determines that such varying speed limits are necessary for public safety.

### III.

Our conclusion that section 42–4–1002(1) authorizes the setting of more than one speed limit by the Department requires us to determine whether this statute constitutes an improper delegation of legislative authority by the General Assembly to the Department of Highways. We answer this question in the negative.

The respondent argues that the Department has created a new crime in the State of Colorado by setting a speed limit applicable only to trucks of a certain weight, and that this is a nondelegable power, citing *People v. Lepik*, 629 P.2d 1080 (Colo.1981). In *Lepik*, we stated that the power to make a law may not be delegated, but the power to determine the state of facts upon which the law operates may be delegated if not left to the uncontrolled discretion of an administrative officer. *Id.* at 1082. In the case before us, the Department did not create a new crime but determined the factual conditions to which section 42–4–

1001 applies. Section 42–4–1002(1) specifically grants the Department the authority to alter a speed limit established under section 42–4–1001 [1] where such alteration is necessary for safety reasons. *See* § 42–4–1002(1).

To determine whether the delegation of legislative authority is valid, we have held that the proper focus should be upon the totality of protection provided by standards and safeguards at both the statutory and administrative levels to protect against uncontrolled exercise of discretionary power. *Mountain View Elec. Ass'n v. Public Utilities Comm'n*, 686 P.2d 1336 (Colo.1984); *Loup-Miller Constr. v. City and County of Denver*, 676 P.2d 1170 (Colo.1984); *Cottrell v. City and County of Denver*, 636 P.2d 703 (Colo.1981). In any analysis of the validity of delegation of legislative authority, the guiding consideration is whether these administrative and statutory standards and safeguards are "sufficient to insure that administrative action will be rational and consistent in the first instance and that subsequent judicial review of that action is available and will be effective." *Cottrell*, 636 P.2d at 709. However, where the power to be exercised is a police power it is impracticable to fix rigid standards without destroying the flexibility necessary for administrative officials to carry out the wishes of the legislature. *Mountain View Elec.*, 686 P.2d at 1343; *Elizondo v. Department of Revenue*, 194 Colo. 113, 570 P.2d 518 (1977). Neither the Department nor the General Assembly can predict all potential safety hazards on the highways, in advance of studies, and prohibit them by statute or regulation.

■ Considering the facts of this case, we conclude that the present delegation of authority under section 42–4–1002(1) contains adequate standards and safeguards. The standard in section 42–4–1002(1), that the alternative speed limits set be "reasonable and safe," provides sufficient standards to allow the Department to lawfully exercise its police power. In addition, we find there to be adequate safeguards to protect against uncontrolled exercise of discretionary power. Section 42–4–1002(1) requires that the Department act only after traffic surveys and investigations establish that a particular segment of highway requires an alteration of the speed limit. The language of section 42–4–1002(1) makes it clear that the Department does not have uncontrolled discretion to change the speed limits on a certain section of highway. The

---

1. Section 42–4–1001 reads as follows:

   **Speed limits.** (1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing or at a speed greater than that specified in subsection (7) of this section when a national uniform speed limit is in effect with respect to speed limits.

   ....

   (7)(a) It is declared to be the purpose of the general assembly that the state of Colorado place itself in a position to receive its full share of funds to be apportioned by the congress of the United States for expenditures on federal-aid highways in this state and to secure to all persons in this state the demonstrated benefits of the increased traffic safety and fuel conservation which may be inherent in any national uniform maximum speed limit.

   (b) Notwithstanding any other provisions of this section, no person shall drive a vehicle on a highway, as defined in section 42–1–102(33), in excess of a maximum lawful speed of fifty-five miles per hour. Prima facie speed limits in excess of fifty-five miles per hour which were in existence prior to January 24, 1974, are hereby lowered to a maximum lawful limit of fifty-five miles per hour. No speed limit shall be authorized above fifty-five miles per hour, and all fifty-five mile speed limits shall be considered maximum lawful speed limits and not prima facie speed limits.

   (c) This subsection (7) shall not be construed to alter or change any prima facie speed limits of less than fifty-five miles per hour.

   ....

   (i) An offense of speeding one to nine miles per hour over the prima facie speed applicable is a class A traffic infraction; an offense of speeding ten to nineteen miles per hour over the prima facie speed applicable is a class A traffic infraction; an offense of speeding twenty miles per hour or more over the prima facie speed applicable is a class 2 traffic offense; and an offense under subsection (3) of this section is a class A traffic infraction. In every charge of a violation of this subsection (7), the complaint, summons, or notice to appear shall specify the speed at which the defendant is alleged to have driven and also the speed limit applicable at the specified location of the alleged violation.

   § 42–4–1001, 17 C.R.S. (1984 & 1986 Supp.).

Department's determination must be based on evidence of a dangerous situation. Evidence presented at trial established that a traffic study was performed at Straight Creek. The statistics indicated that trucks had a higher potential for accidents at this location. Observation by a traffic engineer and a report prepared by the Department on the use of truck escape ramps, prepared in March 1982, showed that a common problem with trucks on a downgrade such as Straight Creek involved the truck's brakes, i.e., brake failure or smoking brakes. The determination that use of a lower gear and maintenance of a slower speed for trucks would result in safer highways is within the discretion of the Department pursuant to section 42–4–1002(1). Further, we note that the Department is required to post the appropriate signs giving notice of the special speed limit. *See* § 42–4–1002(1).

### IV.

The district court held that the Department's action in setting the special speed limit for trucks was arbitrary as to the vehicle classification. We disagree.

■ The right to drive a vehicle on the state highways does not rise to the status of a fundamental right. *Crocker v. Department of Revenue*, 652 P.2d 1067 (Colo. 1982); *Heninger v. Charnes*, 200 Colo. 194, 613 P.2d 884 (1980). Therefore, our constitution, article II, section 25, requires only that the classification scheme be rationally related to a legitimate state interest. *Millis v. Board of County Comm'rs*, 626 P.2d 652 (Colo.1981).

■ In applying the rational basis test to the present case, we conclude that the Department did not act arbitrarily in setting a special speed limit on the downgrade of Straight Creek for trucks of 10,000 pounds or more. The Department's study and observation showed that there was a problem with trucks losing control on that stretch of highway. The construction of two truck escape ramps, together with the slower speed limit for trucks, was a reasonable approach to the problem. Requiring trucks over a certain weight to travel at a speed

of twenty-five miles per hour for a distance of five and one-half miles is not unreasonable.

Accordingly, we reverse the district court's decision and remand with instructions to reinstate the conviction.