MILLER INTERNATIONAL, INC., a
Colorado Corporation,
Plaintiff-Appellee,

v.

STATE of Colorado, DEPARTMENT OF REVENUE, and Alan N. Charnes, Executive Director of the Department of Revenue, State of Colorado, Defendants-Appellants.

No. 80SA519.

Supreme Court of Colorado,
En Banc.

April 26, 1982.

Bernick & Moch, Jimmie D. Mills, Robert B. Moch, Denver, for plaintiff-appellee.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Billy Shuman, Sp. Asst. Atty. Gen., Denver, for defendants-appellants.

ROVIRA, Justice.

Miller International, Inc. (Miller) is a Colorado corporation with its principal place of business in Colorado. The present case involves Miller's corporate income tax liability for the years 1973 through 1976.

Following an administrative hearing before the executive director of the Depart-

ment of Revenue (Department), it was concluded that Miller owed an additional $50,-208.35 plus interest in corporate income taxes. Miller appealed the determination to the district court pursuant to section 39–21–105, C.R.S.1973. The district court entered judgment in favor of Miller, ruling that Miller fully complied with Colorado income tax laws for the years 1973 through 1976 and that regulation 138–1–37 which was promulgated and applied by the Department was null and void as being contrary to law.

The Department appealed the judgment of the district court. The Colorado Court of Appeals referred the case to this court for a determination of jurisdiction pursuant to sections 13–4–109 and –110, C.R.S.1973. We accepted jurisdiction and now affirm the judgment of the trial court.

The facts of this dispute were stipulated to by the parties at the administrative hearing and in the trial court. The stipulation reflects that Miller was engaged in the sale of western wear during the years in question and did business both in and outside of Colorado. Miller's gross receipts resulting from the sale of merchandise are divided into three categories. First, Miller made sales to customers who received the goods in Colorado. The parties agree that these receipts were properly taxed by Colorado. Second, Miller made sales to customers in foreign states in which it was doing business within the meaning of Pub.L. No. 86–272, 73 Stat. 555, 15 U.S.C. § 381 (1976).[1] The receipts derived from these transactions were taxable by the foreign states and were not assignable to Colorado under section 39–22–303(2)(b), C.R.S.1973.[2] Finally,

Miller made sales to customers in foreign states in which it was not doing business within the meaning of Pub.L. No. 86–272, 73 Stat. 555, 15 U.S.C. § 381 (1976). The parties agree that the income derived from the final category of transaction cannot be taxed by the foreign state. However, they dispute the assignability to Colorado of receipts derived from sales to customers in states in which Miller is not doing business.

The sole issue presented is whether Miller, a Colorado corporation doing business both in and outside of Colorado with its principal place of business in Colorado, may have the portion of its income which is derived from sales to customers in foreign states in which it is not doing business within the meaning of Pub.L. No. 86–272, 73 Stat. 555, 15 U.S.C. § 381 (1976), assigned to Colorado under section 39–22–303(2)(b), C.R.S.1973, for the purpose of computing the amount of corporate income tax owed to Colorado.

Section 39–22–303, C.R.S.1973, as it existed during the period in question,[3] provided for the allocation of net income among states for the purpose of determining tax liability to Colorado. Subsection (1) set forth specific rules dealing with the allocation of certain types of income, such as interest, rents, and royalties. Subsection (2) provided for the allocation of the remaining net income not dealt with in subsection (1). Specifically, subsection (2)(b) applied to Miller for the taxable years in issue. It provided:

> (b) If the corporation derives income from sources both within and without

---

**1.** Pub.L. No. 86–272, 73 Stat. 555, 15 U.S.C. § 381 (1976) provides in part that a corporation may not be taxed by a foreign state if its business activity in that state is limited to either, or both, of the following:

> "(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State; and
> "(2) the solicitation of orders by such person, or his representative, in such State in the

name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1)".

**2.** Section 39–22–303(2)(b), C.R.S.1973, provides a formula for allocating or apportioning income between states for tax purposes.

**3.** Section 39–22–303, C.R.S.1973 (1981 Supp.), was amended in 1979 to, among other things, specifically address the issue presented here. *See* note 9 *infra*.

Colorado, the said remainder of the net income shall be divided into two equal parts: Of one-half, such portions shall be attributed to sources within Colorado as shall be found by multiplying the said one-half by a fraction, the numerator of which is the net book value recognized for federal income tax purposes of all of the real property and tangible personal property of the corporation situated within Colorado, and the denominator of which shall be the net book value recognized for federal income tax purposes of all the real property and tangible personal property of the corporation wherever situated; of the other one-half, such portion shall be attributed to the sources within Colorado as shall be found by multiplying the said one-half by a fraction, the numerator of which is the amount of gross receipts assignable to Colorado as provided in subsection (3) of this section and the denominator of which is the amount of gross receipts from all its business.[4]

In this case, the figure which is in issue is the numerator of the gross receipts fraction. The numerator is "the amount of gross receipts assignable to Colorado as provided in subsection (3)...." Subsection (3) provided in part:

"(3) The amount of gross receipts assignable to Colorado shall be the amount of gross receipts from sources provided for in this subsection (3) as follows:

(a) Sales where the goods, merchandise, and property are received in this state by the purchaser."

The Department determined that gross receipts assignable to Colorado, and thus includable in the numerator of the gross receipts fraction, included sales in which the goods were not received in this state by the purchaser. This determination was reached based upon the application of regulation 138–1–37, which was promulgated by the Department.

Regulation 138–1–37 provided in part that "a corporation will not be allowed to allocate or apportion income away from Colorado where such income is from a state in which ... the corporation is not doing business." It also provided that "no sale may be assigned to a state where the corporation is not doing business" and that "any sale not otherwise assignable shall be assigned to that state where the principal place of business is located." Regulation 138–1–37(3)(b).

This regulation embodies what is commonly known as the "throwback" rule. Throwback provisions are designed to insure that 100% of a multistate corporation's income is taxable in some state.[5] Under these provisions, receipts derived from sales which would otherwise be apportioned to a state which lacks the requisite nexus to impose an income tax on the corporation[6] is apportioned to a state that can tax the receipts. In this case, the regulation reapportions the receipts to the corporation's principal place of business.

The Multistate Tax Compact, section 24–60–1301 to –1307, C.R.S.1973, has a specific throwback provision. Article IV, Paragraph 16, provides that:

"Sales of tangible personal property are in this State if:

(a) the property is delivered or shipped to a purchaser ... within this State ...; or

(b) *the property is shipped from ... this State and ... (2) the taxpayer is not*

---

4. The formula stated in section 39–22–303(2), C.R.S.1973, is expressed as follows:

$$\text{½ Remaining Net Income} \times \frac{\text{Value of Colo. Property}}{\text{Value of All Property}}$$

$$+ \text{½ Remaining Net Income} \times \frac{\text{Colorado Gross Receipts}}{\text{All Gross Receipts}}$$

5. There are a number of articles discussing throwback rules. *See* Hellerstein, *Construing*

*the Uniform Division of Income for Tax Purposes Act: Reflections on the Illinois Supreme Court's Reading of the "Throwback" Rule*, 45 U.Chi.L.Rev. 768 (1978); Keesling & Warren, *California's Uniform Division of Income for Tax Purposes Act—Part II*, 15 U.C.L.A.L.Rev. 655, 671–72 (1968); Pierce, *The Uniform Division of Income for State Tax Purposes*, 35 Taxes 747 (1957).

6. *See* note 1 *supra*.

*taxable in the State of the purchaser."* (emphasis added).[7]

While this court has never been faced with a challenge to the throwback rule, we note that the rule has withstood challenges in other jurisdictions.[8] In those cases, however, the throwback rule was included within the statute being construed. It was not being imposed solely by an administrative regulation.

Here, however, we are not dealing with a throwback provision which has been enacted into law. The provisions of Article IV of the Multistate Tax Compact, 24–60–1301, C.R.S.1973, are not applicable because Miller has not elected to apportion or allocate its income in accordance with the provisions of the compact. Article III of the compact provides that it is for the taxpayer to elect whether to proceed under state law or under the provisions of the compact. Accordingly, the validity of the regulation must be measured by the state corporate taxation provisions, section 39–22–301 to –305, C.R.S.1973.

The apportionment statutes applicable here, section 39–22–303(2)(b) and 303(3)(a), do not employ a throwback device. They merely provide that receipts from "[s]ales where the goods, merchandise, and property are received in this state by the purchaser" are assignable to Colorado for inclusion in the apportionment formula. The legislature's failure to include the language of the Multistate Tax Compact or the Uniform Division of Income for Tax Purposes Act (UDITPA) embodying a throwback concept is striking.[9]

Nevertheless, the Department argues that the regulation is valid and that it comports with the overall legislative scheme. Further, the Department contends that the regulation is consistent with and authorized by the corporate taxation statute.

We begin by restating some often repeated principles concerning regulations promulgated by an administrative agency. The executive director of the Department is empowered "to adopt ... such rules and regulations not inconsistent with the provisions of ... articles 22 and 26 to 28 of this title ... and, subject to other provisions of law relating to the promulgation of regulations." Section 39–21–112, C.R.S.1973. As we have often said, a regulation must further the will of the legislature and may not modify or contravene an existing statute. *Cohen v. Department of Revenue*, 197 Colo. 385, 593 P.2d 957 (1979); *Travelers Indem. Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976); *Big Top, Inc. v. Schooley*, 149 Colo. 116, 368 P.2d 201 (1962); *Liebhardt v. Tasher*, 132 Colo. 554, 290 P.2d 1107 (1955). Thus, any regulation which is inconsistent with or contrary to a statute is void and of no effect. *Cohen v. Department of Revenue, supra; Weed v. Occhiato*, 175 Colo. 509, 488 P.2d 877 (1971).

The Department relies upon sections 39–22–301(1) and 39–22–303(4) as support for the promulgation of the throwback regulation. Section 301(1) is the general corporate tax provision. It imposes an annual tax in an amount equal to five percent of the net income derived from sources in Col-

---

7. Furthermore, the Uniform Division of Income for Tax Purposes Act (UDITPA) provides a throwback rule in the act itself. Colorado has not separately adopted the uniform act, but Article IV of the Multistate Tax Compact is identical to the provisions of the UDITPA. *See* UDITPA § 16, 7A U.L.A. 105 (1978).

8. *See, e.g., Scott & Williams, Inc. v. Board of Taxation*, 117 N.H. 189, 372 A.2d 1305 (1977); *New Jersey Machine of N. H., Inc. v. Department of Revenue Admin.*, 117 N.H. 262, 372 A.2d 604 (1977); *Covington Fabrics Corp. v. South Carolina Tax Comm'n*, 264 S.C. 59, 212 S.E.2d 574 (1975).

9. We note that the Department admits that the legislature expressly rejected the throwback rule by amending section 303 in 1979. Section 39–22–303(4)(d)(I), C.R.S.1973 (1981 Supp.), provides:

"(d) 'Gross receipts assignable to Colorado' means:

(I) Sales, where the goods, merchandise, or property is delivered or shipped to a purchaser within this state, *regardless of the f.o.b. point, other condition of sale, or the taxability of the corporation in the state or foreign country in which the goods are shipped or delivered ....*" (emphasis added).

orado. This section provides further that income from sources within Colorado includes "income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate, or foreign commerce."

Section 39–22–303(4), C.R.S. 1973, is part of the allocation of income provision of the statute. It provides:

"(4) In any case where it appears to the satisfaction of the executive director that the method of allocation or apportionment set forth in subsections (1) and (2) of this section does not properly reflect the amount of income derived from sources within Colorado or if for any reason it is determined that the provisions of subsection (1) of this section are inoperative for any reason, the executive director is authorized in his discretion to determine a method of allocation or apportionment fairly calculated to determine the net income derived from or attributable to sources within Colorado."

 We fail to see how the regulation promulgated by the director of the Department can be supported by these two statutory sections. First of all, section 301(1) is a general provision which does not specifically address the issue at hand. It provides no authority for the regulation here challenged. Further, sections 303(2)(b) and 303(3)(a) do specifically address the assignability of certain receipts to Colorado. Neither of these relevant sections adopts a throwback rule.

The Department's reliance upon 39–22–303(4), C.R.S.1973, is likewise misplaced. That section is to be narrowly construed and employed only in unusual situations. *See Donald M. Drake Co. v. Department of Revenue*, 263 Or. 26, 500 P.2d 1041 (1972) (interpreting a similar provision contained in the UDITPA); Keesling & Warren, *California's Uniform Division of Income for Tax Purposes Act—Part I*, 15 U.C.L.A.L. Rev. 156, 170–71 (1967); Pierce, *The Uniform Division of Income for State Tax Purposes*, 35 Taxes 747 (1957). In this case, the regulation sets forth a rule which is to be applied in every case, allocating to Colorado gross receipts which would otherwise be apportioned to states in which the corporation is not taxable. It is applied without requiring a specific finding by the director that the method of allocation or apportionment set forth in section 39–22–303(2)(b) fails to properly reflect the amount of income derived from sources in Colorado. This does not comport with the requirements of section 303(4).

By promulgating a regulation which is inconsistent with section 39–22–303(3)(a), C.R.S.1973, the Department attempts to amend and expand existing tax laws. Only the legislature has the power to amend laws and enact taxing statutes. *Colo.Const.*, Art. III; *Colo.Const.* Art. V, Sec. 31; *Cohen v. Department of Revenue, supra; Weed v. Occhiato, supra.* Accordingly, the regulation is void and cannot be applied against Miller.

The judgment of the district court is affirmed.