The PEOPLE of the State of Colorado, Petitioner,

v.

Roxanne E. LOWRIE, Respondent.

No. 87SC74.

Supreme Court of Colorado, En Banc.

Sept. 19, 1988.

Barney Iuppa, Dist. Atty., Jeanne S. Smith, Chief Deputy Dist. Atty., Colorado Springs, for petitioner.

Dennis W. Hartley, P.C., Dennis W. Hartley, Colorado Springs, for respondent.

QUINN, Chief Justice.

The question in this case is whether the General Assembly has impermissibly delegated legislative authority to the Director of the Department of Revenue (Director), as the state licensing authority for licenses issued under the Colorado Liquor Code, to promulgate rules and regulations pertaining to a tavern licensee's sale of alcoholic beverages for on-premises consumption by customers, the violations of which constitute criminal conduct. We granted certiorari to review a judgment of the District Court of El Paso County, which affirmed the county court's dismissal of criminal charges brought against Roxanne E. Lowrie, the licensed owner of a tavern in Colorado Springs, for violating a regulation promulgated by the Director of the Department of Revenue. In affirming the judgment of dismissal, the district court ruled that the General Assembly had unconstitutionally delegated to the Director of the department the legislative authority to define those acts that constitute criminal conduct. We now reverse the judgment and remand the case for further proceedings.

## I.

The Colorado Liquor Code, §§ 12-47-101 to -144, 5 C.R.S. (1985 & 1987 Supp.), provides for the issuance of a tavern license to persons selling alcoholic beverages to customers for on-premises consumption. § 12-47-119.5(1), 5 C.R.S. (1985). The Executive Director of the Department of Revenue, or the Deputy Director if the Director so authorizes, is designated as the state licensing authority for the Colorado Liquor Code. § 12-47-103(27), 5 C.R.S. (1985). The Liquor Code authorizes the Director to make such rules and regulations as necessary for the proper regulation and control of the sale of alcoholic beverages and for the enforcement of the liquor laws. § 12-47-105(1)(b), 5 C.R.S. (1985). All such rules and regulations must be "reasonable and just," § 12-47-105(2)(a), 5 C.R.S. (1985), and may cover such subjects as "practices unduly designed to increase the consumption of alcoholic beverages," "standards of cleanliness, orderliness, and decency," and "such other matters as are necessary for the fair, impartial, stringent, and comprehensive administration" of the liquor laws. *Id.* Section 12-47-130(1)(a), 5 C.R.S. (1985), states, in pertinent part, as follows:

Any person violating any of the provisions of this article or any of the rules and regulations authorized and adopted pursuant to it is guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not more than five thousand dollars for each offense, or by imprisonment in the county jail for not more than one year, or by both such fine and imprisonment.

The Director, acting pursuant to his statutory rulemaking authority, adopted regulation 47-105.1, 1 Code Colo.Reg. 203-2 (1979), which is entitled "Conduct of Establishment" and provides in pertinent part as follows:

A. *Orderliness, Loitering, Serving of Intoxicated Persons.*

Each person licensed under this Article shall conduct his licensed premises in a decent, orderly and respectable manner, and shall not permit on his licensed premises the serving or loitering of an apparently intoxicated person or habitual drunkard, nor shall he permit profanity, rowdiness, undue noise, or other disturbances or activity offensive to the senses of the average citizen, or to the residents of the neighborhood in which the licensed establishment is located.

B. *Attire and Conduct of Employees and Patrons.*

No person licensed under this Article shall engage in or permit the following:

1. Employment or use of any person in the sale or service of alcoholic liquor in or upon the licensed premises while such person is unclothed or in such attire, costume or clothing as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals.

2. Employment or use of the services of any hostess or other person to mingle with the patrons while such hostess or other person is unclothed or in such attire, costume or clothing as described in paragraph No. (1) above.

3. Any person on the licensed premises touching, caressing, or fondling the breasts, buttocks, anus or genitals of any other person.

4. Any employee or person on the licensed premises wearing or using any device or covering, exposed to view, which simulates the breasts, genitals, anus, pubic hair or any portion thereof.

C. *Entertainment.*

Live entertainment is permitted on any licensed premises, except that:

1. No person licensed under this Article shall permit any person to perform acts of or acts which simulate:

(a) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law.

(b) The touching, caressing or fondling of the breast, buttocks, anus or genitals.

(c) The displaying of the pubic hair, anus, vulva or genitals.

2. No licensee shall permit any person to use artificial devices or inanimate objects to depict any of the prohibited activities described above.

3. No licensee shall permit any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus.

Roxanne E. Lowrie is the owner of PT's Nightclub, a licensed tavern in Colorado Springs in which topless dancing is offered as entertainment. Lowrie was charged by summons and complaint in the El Paso County Court with fifty-four misdemeanor counts of violating Regulation 47–105.1. The charges were based on undercover police officers' observations of various activities by employees at the tavern on several evenings in December 1985. Each summons and complaint listed the source of the charge as section 12–47–130 and Regulation 47–105.1, and then contained a brief description of the offense, of which the following are examples:

Employee of establishment served a visibly intoxicated patron an alcoholic beverage.

An employee (dancer) touched her bare breasts during her dance routine.

An employee (dancer) wore a G-string that exposed her pubic hair.

Lowrie moved to dismiss the charges filed against her, claiming that the Colorado Liquor Code unconstitutionally delegates to the Director of the Department of Revenue legislative authority to define criminal conduct. The county court granted Lowrie's motion to dismiss, and the People appealed the order of dismissal to the district court. In affirming the judgment of dismissal, the district court ruled that the Colorado Liquor Code unconstitutionally delegated to the Department of Revenue the legislative authority to determine what particular acts constitute a criminal offense and that Regulation 47–105.1 was constitutionally invalid as an unlawful exercise of legislative authority by the Director.

We granted the People's petition for certiorari to consider whether sections 12–47–105(1)(b) and 12–47–130 of the Colorado Liquor Code unconstitutionally delegate to the Director of the Department of Revenue legislative authority to define criminal conduct.

II.

The Colorado Constitution divides the powers of government into three distinct departments—the legislative, executive, and judicial—and provides that no persons

or collections of persons charged with the exercise of powers belonging to one of these departments shall exercise any power properly belonging to either of the others, except as expressly directed or permitted by the constitution. Colo. Const. art. III. The legislative power of the state is vested in the General Assembly "consisting of a senate and house of representatives, both to be elected by the people...." Colo. Const. art. V., § 1. The nondelegation doctrine, which has its source in the constitutional separation of powers, prohibits the General Assembly from delegating its legislative power to some other agency or person. *E.g., People v. Peterson,* 734 P.2d 118 (Colo.1987); *People v. Lepik,* 629 P.2d 1080 (Colo.1981); *Swisher v. Brown,* 157 Colo. 378, 402 P.2d 621 (1965).

■ This is not to say that the General Assembly may not delegate rulemaking authority to an administrative agency. Although the power to legislate implies that the General Assembly also has the responsibility not to delegate that power to someone else, the legislative department of government does not abdicate its lawmaking function "when it describes what job must be done, who must do it, and the scope of his authority." *People v. Willson,* 187 Colo. 141, 144, 528 P.2d 1315, 1316 (1974) (quoting *Swisher,* 157 Colo. at 388, 402 P.2d at 626). As long as the General Assembly establishes "a definite framework for the law's operation," it may properly delegate the details of rulemaking to an administrative agency to carry out that operation. *Id.* As our decisions recognize, it will often be impracticable for the General Assembly to fix rigid standards to guide agency action, particularly in situations involving exercise of the police power, without destroying the flexibility necessary to effectuate obvious legislative goals in dealing with complex economic and social problems. *Swisher,* 157 Colo. at 387–89, 402 P.2d at 626–27; *see also Lloyd A. Fry Roofing Co. v. State Department of Health Air Pollution Variance Board,* 179 Colo. 223, 228–29, 499 P.2d 1176, 1179 (1972); *People ex rel. Dunbar v. Giordano,* 173 Colo. 567, 571, 481 P.2d 415, 416 (1971).

The nondelegation doctrine is not merely concerned with the proper distribution of powers among the departments of government, but also looks to the protection of the public from the imposition of irrational rules created by non-elected officials. *See generally Olinger v. People,* 140 Colo. 397, 344 P.2d 689 (1959). While some of our earlier decisions concentrated almost exclusively on the specificity of statutory standards for guiding an administrative agency's rulemaking authority, *e.g., People v. Giordano,* 173 Colo. 567, 481 P.2d 415 (1971); *Asphalt Paving Co. v. Board of County Commissioners,* 162 Colo. 254, 425 P.2d 289 (1967), our more recent decision in *Cottrell v. City and County of Denver,* 636 P.2d 703 (Colo.1981), adopted the modern analytical approach of focusing primarily on the totality of protections which statutory and administrative standards, as well as procedural safeguards, provide to those persons adversely affected by administrative action. *Cottrell v. City and County of Denver,* 636 P.2d 703, 709 (Colo.1981); *accord Orsinger Outdoor Advertising, Inc. v. Department of Highways,* 752 P.2d 55, 62 (Colo.1988); *Peterson,* 734 P.2d 118; *Mountain View Electric Association, Inc. v. Public Utilities Commission,* 686 P.2d 1336, 1342 (Colo.1984).

■ We have carefully scrutinized statutory delegations of rulemaking authority when the statutory scheme establishes criminal penalties for the violation of regularly adopted rules. *See, e.g., Lepik,* 629 P.2d 1080; *Olinger v. People,* 140 Colo. 397, 344 P.2d 689 (1959); *Casey v. People,* 139 Colo. 89, 336 P.2d 308 (1959). The important liberty interest implicated by such a statutory delegation, including the right to reasonable notice of criminally proscribed conduct, justifies a closer scrutiny than might otherwise be applicable to delegated authority limited to civil regulatory administration. Although the General Assembly may not delegate to an administrative agency the power to define criminal conduct, it may authorize the agency to adopt rules carrying criminal sanctions as long as the statutory scheme provides sufficient standards and safeguards to protect

against the unreasonable exercise of discretionary power and offers adequate notice of the penalties applicable to a violator. *See People v. Willson,* 187 Colo. 141, 528 P.2d 1315 (upholding delegation of authority to Director of Department of Revenue to promulgate rule prohibiting tavern employees from soliciting drinks from customers, the violation of which was criminally punishable); *Memorial Trusts, Inc. v. Beery,* 144 Colo. 448, 356 P.2d 884 (1960) (upholding statute authorizing Commissioner of Insurance to promulgate rules relating to funeral benefit insurance, the violations of which were punishable by fine or imprisonment, or both). Such statutory grants of authority are not uncommon.[1] A statutory delegation of authority to make rules carrying criminal sanctions for their violation, however, must not be so open-ended as to vest the agency with "unbridled authority to declare conduct criminal." *Lepik,* 629 P.2d 1082.

■ In resolving this case, we must be mindful of long-standing rules applicable to a constitutional challenge to a statute. It is generally presumed that a statute enacted by the General Assembly comports with constitutional standards, with the result that a party challenging the constitutionality of a statute bears the burden of establishing its unconstitutionality beyond a reasonable doubt. *E.g., People v. Alexander,* 663 P.2d 1024 (Colo.1983); *Bollier v. People,* 635 P.2d 543 (Colo.1981); *People v. Summit,* 183 Colo. 421, 517 P.2d 850 (1974). A similar presumption exists with respect to administrative rules and regulations regularly promulgated by an administrative agency. *E.g., Augustin v. Barnes,* 626 P.2d 625 (Colo.1981); *Moore v. District Court,* 184 Colo. 63, 518 P.2d 948 (1974). If a challenged statute is capable of different constructions, one of which comports with constitutional standards for validly delegated authority to an administrative agency, we must adopt that construction that accords with constitutional norms. *Swisher,* 157 Colo. at 389, 402 P.2d at 627.

These guidelines provide the analytical framework for resolving whether the Colorado Liquor Code's delegation of rulemaking authority to the Director constitutes an unconstitutional delegation of legislative authority to define criminal conduct.

### III.

■ The People argue that the Colorado Liquor Code contains adequate standards to pass constitutional muster as a proper exercise of the General Assembly's power to delegate rulemaking authority to an administrative agency. We agree with the People's claim.

The Colorado Liquor Code was enacted as "an exercise of the police powers of the state for the protection of the economic and social welfare and the health, peace, and morals of the people of this state...." § 12–47–102(1), 5 C.R.S. (1985). The sale and consumption of alcoholic beverages takes many forms and arises in countless situations and environments, many of which are not subject to precise categorization. As a result, the General Assembly has delegated the task of regulating the sale and consumption of alcohol to the Director as the "state licensing authority."

---

1. Examples of current Colorado statutes that classify violations of rules or regulations as misdemeanors include the following: § 9–10–104, 3B C.R.S. (1986) (violation of rules and regulations promulgated by the Division of Labor regarding the ventilation of garages and shops punishable by a fine of not more than three hundred dollars, or imprisonment in county jail for not more than ninety days, or both); § 12–44–212, 5 C.R.S. (1985) (violations of provisions of the sanitary code, adopted by the Department of Health, punishable by a fine of up to five hundred dollars, or imprisonment in county jail for up to ninety days, or both); § 12–48.5–111, 5 C.R.S. (1985) (violations of rules and regulations adopted by local licensing authorities pursuant to the massage parlor code punishable by a fine of not more than five thousand dollars, or imprisonment in county jail for not more than one year, or both); § 40–2.1–104, 17 C.R.S. (1984) (violations of rules or regulations regarding transportation of hazardous materials promulgated by Public Utilities Commission punishable by fines of up to one thousand dollars, or imprisonment in county jail for up to one year, or both); § 40–10–113, 17 C.R.S. (1984) (violations of rules and regulations regarding motor vehicle carriers promulgated by the Public Utilities Commission punishable by one thousand dollars, or six months in county jail, or both).

§ 12–47–103(27), 5 C.R.S. (1985). A substantial degree of flexibility in rulemaking is required if the Director is to effectively carry out this delegated responsibility.

In our view, the Colorado Liquor Code provides sufficient standards and safeguards to protect against the unreasonable exercise of the Director's power and offers adequate notice of the penalties applicable to one violating such rules. Section 12–47–105(1)(b) generally authorizes the Director to promulgate such rules as are necessary for the proper regulation for the sale of alcoholic beverages. Such rules may specifically cover such subjects as "practices unduly designed to increase the consumption of alcoholic beverages" and "standards of cleanliness, orderliness, and decency." § 12–47–105(2)(a), 5 C.R.S. (1985). In addition, the General Assembly has provided the public with express notice that any person violating any rule or regulation authorized and adopted pursuant to the Colorado Liquor Code is guilty of a misdemeanor and may be punished by a five thousand dollar fine and/or a one year sentence to the county jail. § 12–47–130(1)(a), 5 C.R.S. (1985).

The legislative charge to the Director to adopt rules and regulations not only with respect to the sale of alcoholic beverages in licensed taverns but also in relation to practices unduly designed to increase the consumption of alcoholic beverages, §§ 12–47–105(1)(a) and (2)(a), 5 C.R.S. (1985), provides a sufficient standard to support regulation 47–105.1A, which prohibits the serving of alcoholic beverages to an apparently intoxicated person. In similar fashion, we read the legislative mandate to the Director to promulgate rules relating to "orderliness and decency" in taverns as a sufficient warrant for regulation 47–105.1C, which prohibits live entertainment that involves the "touching, caressing or fondling of the breast" and "the displaying of the pubic hair."

The Colorado Liquor Code places limits on the Director's authority to make rules and regulations, § 12–47–105(2)(a), 5 C.R.S. (1985), and does not vest the Director with unbridled discretion in regard to rulemaking. While there is admittedly some generality in the statutory standards—a fact necessitated by the extensive and varied range of activities associated with the sale and consumption of alcohol—there can be no question here that Regulation 47–105.1 promulgated by the Director is within the guidelines prescribed by the General Assembly.[2]

In urging a contrary interpretation of the statutory scheme, Lowrie relies primarily on this court's decision in *Lepik*, 629 P.2d 1080. In that case we struck down as an unconstitutional delegation of legislative authority the statutory offense of introducing contraband in the second degree, § 18–8–204, 8 C.R.S. (1978), on the basis that the statutory definition of "contraband" included any article or thing "which a person confined in a detention facility is prohibited from obtaining or possessing by ... rule, regulation or order lawfully issued by the administrative head of the detention facility." *Lepik*, 629 P.2d at 1082. After noting the modern tendency to permit liberal grants of discretion to administrative bodies, we emphasized that "the power delegated cannot be expanded to the point where an administrative officer is possessed of unbridled authority to declare conduct criminal." *Id.* We then concluded that the statute was constitutionally infirm because it contained "no standards to guide the administrative head of the detention facility in the exercise of the discretion delegated." *Id.* In contrast to the statute in *Lepik*, the Colorado Liquor Code does provide standards to guide administrative rulemaking with respect to the conduct pro-

---

**2.** The People suggest that our decision in *Citizens for Free Enterprise v. Department of Revenue*, 649 P.2d 1054 (Colo.1982), in which we upheld the validity of regulation 47–105.1 as within the authority delegated to the Director, controls the resolution of this case. Our opinion in that case, however, dealt with the validity of the regulation and not, as here, with the constitutionality of various provisions of the Colorado Liquor Code which delegate to the Director the authority to promulgate such a regulation. *Citizens for Free Enterprise*, therefore, does not resolve the particular issue raised here.

scribed by Regulation 47–105.1—that is, the prohibition against serving an apparently intoxicated person and the prohibition against live entertainment involving a touching of the breast or the display of pubic hair. Lowrie's reliance on *Lepik* as controlling authority for this case is misplaced.

This case is analytically similar not to *Lepik* but to *People v. Willson*, 187 Colo. 141, 528 P.2d 1315. In *Willson* we affirmed the misdemeanor conviction of the defendant, the owner of a bar, for violating a Colorado Liquor Code regulation which prohibited a liquor licensee from employing persons to mingle with patrons and solicit the purchase or sale of drinks. After noting that the Liquor Code authorized the Department of Revenue to make rules "necessary for the proper regulation and control of the sale of alcohol" and that such regulations "may cover practices 'unduly designed to increase the consumption of alcoholic beverages,'" 187 Colo. at 144, 528 P.2d at 1316, we concluded:

> Analysis of the legislative scheme of the Liquor Code indicates that the regulation in question is clearly within the power delegated to the Department of Revenue. Indeed, the regulation as promulgated is a proper exercise of the authority delegated and outlined in the legislative mandate, which specifies a definite plan for the enforcement of the Liquor Code, and the framework under which licensees are to operate their premises.

*Id.* at 144, 528 P.2d at 1316–17.

Given the varied and complex nature of the problems associated with the sale and consumption of alcoholic beverages, we are satisfied that the rulemaking standards set forth in section 12–47–105 adequately delineate the permissible areas of regulation delegated to the Director and provide a prospective violator with adequate notice of the penalty, and that, in contrast to the ruling of the district court, section 12–47–.130 does not unconstitutionally delegate to the Director the uncontrolled authority to define criminal conduct. We accordingly reverse the judgment of the district court and remand the case to that court with directions to return the case to the county court for further proceedings.