Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 27, 2020

**2020 CO 29**

**No. 19SA143** *Amica Life Insurance Company v. Wertz*—Non-Delegation Doctrine—
**Interstate Compacts—Suicide Exclusion Policies.**

This case requires the supreme court to answer the following certified

question from the Tenth Circuit Court of Appeals:

> May the Colorado General Assembly delegate power to an interstate
> administrative commission to approve insurance policies sold in
> Colorado under a standard that differs from Colorado statute?

Answering the certified question narrowly, the supreme court now

concludes that the General Assembly did not have the authority to delegate to the

Interstate Insurance Product Regulation Commission the power to issue a

standard authorizing the sale of life insurance policies in Colorado containing a

two-year suicide exclusion when a Colorado statute prohibits insurers doing

business in Colorado from asserting suicide as a defense against payment on a life

insurance policy after the first year of that policy.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2020 CO 29**

**Supreme Court Case No. 19SA143**
*Certification of Question of Law*
United States Court of Appeals for the Tenth Circuit Case No. 18-1455

**Plaintiff Counter Defendant-Appellee:**

Amica Life Insurance Company,

v.

**Defendant Counterclaimant-Appellant:**

Michael P. Wertz.

**Certified Question Answered**
*en banc*
April 27, 2020

**Attorneys for Plaintiff-Appellee:**
Cozen O'Connor
Christopher S. Clemenson
    *Denver, Colorado*

Cozen O'Connor
Lisa D. Stern
    *West Conshohocken, Pennsylvania*

**Attorneys for Defendant-Appellant:**
The Law Office of Ruth Summers, LLC
Ruth Summers
    *Boulder, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers Association:**
McDermott Law, LLC
Timothy M. Garvey
    *Denver, Colorado*

**Attorneys for Amici Curiae National Association of Insurance Commissioners and Interstate Insurance Product Regulation Commission:**
Holland & Hart LLP
Marcy G. Glenn
Melissa Y. Lou
    *Denver, Colorado*

**JUSTICE GABRIEL** delivered the Opinion of the Court.

¶1    This case requires us to answer the following certified question from the Tenth Circuit Court of Appeals:

> May the Colorado General Assembly delegate power to an interstate administrative commission to approve insurance policies sold in Colorado under a standard that differs from Colorado statute?

¶2    The certified question arises from a dispute in which plaintiff Amica Life Insurance Company seeks a declaratory judgment that it is not required to pay defendant Michael P. Wertz benefits under a life insurance policy naming Wertz as the beneficiary. The policy, which was issued in compliance with a standard enacted by the Interstate Insurance Product Regulation Commission (the "Commission"), contained a two-year suicide exclusion, and the insured committed suicide more than one year but less than two years after Amica had issued the life insurance policy to him. Wertz contends, however, that the policy's two-year suicide exclusion is unenforceable because it conflicts with a Colorado statute, section 10-7-109, C.R.S. (2019), which provides:

> The suicide of a policyholder after the first policy year of any life insurance policy issued by any life insurance company doing business in this state shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policyholder was sane or insane.

Wertz asserts that the Colorado General Assembly could not properly delegate to the Commission the authority to enact a standard that would effectively override this statute.

3

¶3 We agree with Wertz. Accordingly, answering the certified question narrowly, we conclude that the General Assembly did not have the authority to delegate to the Commission the power to issue a standard authorizing the sale of life insurance policies in Colorado containing a two-year suicide exclusion when a Colorado statute prohibits insurers doing business in Colorado from asserting suicide as a defense against payment on a life insurance policy after the first year of that policy.

## I. Facts and Procedural History

¶4 In 2004, the Colorado General Assembly passed legislation to join with other states to establish the Interstate Insurance Product Regulation Compact, section 24-60-3001, C.R.S. (2019) (the "Compact"). The Compact's purpose is, among other things, to create the Commission and to "develop uniform standards for insurance products covered under the Compact." *Id.* at art. I, §§ 2, 6.

¶5 As pertinent here, the Compact authorized the Commission to promulgate rules, to establish uniform standards governing the form of insurance policies covered under the Compact, and to review and approve such insurance policies. *Id.* at art. IV, §§ 1–3. Under the Compact, such rules, standards, and complying policies are given "the force and effect of law and shall be binding in the Compacting States." *Id.*

4

¶6 In accordance with the foregoing authority, the Commission established certain Individual Term Life Insurance Policy Standards, IIPRC-L-04-I (2016) ("Standards"). As pertinent here, one of these Standards provides, "The suicide exclusion period shall not exceed two years from the date of issue of the policy." *Id*. at § 3(Y)(3).

¶7 Pursuant to this Standard, the Commission authorized the sale of life insurance policies containing a two-year suicide exclusion in Compacting States like Colorado. *Id.* In Colorado, however, by statute, insurers doing business in this state may not assert suicide as a defense against payment of a life insurance policy after the first year of that policy. *See* § 10-7-109. Thus, this case presents a scenario in which the policy at issue complied with the Commission's suicide-exclusion Standard but in which enforcement of that Standard amounts to the assertion of a defense that is precluded under Colorado statutory law.

¶8 Specifically, on January 28, 2014, Amica issued a ten-year convertible level term life insurance policy (with an annual renewable term provision) to Martin Fisher. The policy was in the face amount of $500,000 and named Wertz as the beneficiary. Pursuant to the Commission's Standards, the policy included a suicide-exclusion section that provided, "Suicide of the Insured, while sane or insane, within two (2) years from the Date of Issue is not covered under this policy."

5

¶9 Thereafter, on March 12, 2015—that is, more than one year but less than two years after the policy was issued—Fisher committed suicide. Wertz then submitted a claim for the death benefit under the policy, but Amica denied that claim, relying on the policy's two-year suicide exclusion. *Amica Life Ins. Co. v. Wertz*, 272 F. Supp. 3d 1239, 1244 (D. Colo. 2017).

¶10 Recognizing the imminent dispute between the parties, Amica filed suit in the United States District Court for the District of Colorado, seeking a declaratory judgment that it had properly denied Wertz's claim. *Id.* Wertz responded that the two-year suicide exclusion in the policy violated Colorado state law and should be declared unenforceable. *Id.* In addition, he filed counterclaims for reformation of the policy, breach of contract, and common-law bad faith breach of insurance contract. *Id.* Amica then moved for summary judgment, asserting that, as a matter of law, the Standards control over section 10-7-109. *Id.* at 1245.

¶11 The district court determined that to decide the summary judgment motion before it, it could not avoid the question of the validity of the Compact under the Colorado Constitution. *Id.* at 1247. In particular, after observing that an administrative regulation that is inconsistent with or contrary to a statute is void, the court noted Amica's argument that interstate compacts "operate in a different legal dimension, where things can happen that normally do not happen." *Id.* at

6

1247–48. Finding that the authorities on which Amica relied did not establish this principle, the court certified the following question to us:

> Does the Colorado Constitution empower the Colorado Legislature to enter into the Interstate Insurance Product Regulation Compact, Colo. Rev. Stat. § 24-60-3001, considering that: (a) the Compact will not be approved by the United States Congress; (b) the Compact creates an administrative body with power to promulgate rules and regulations with the force of law in Colorado; and (c) such rules and regulations supersede any Colorado statute to the extent of a conflict between the rule or regulation and the Colorado statute?

*Id.* at 1248, 1255.

¶12   We declined to accept this certified question, and the district court ultimately concluded, "to its surprise," that "the Colorado Legislature may validly delegate to an administrative agency the power to promulgate a regulation that modifies a statute." *Amica Life Ins. Co. v. Wertz*, 350 F. Supp. 3d 978, 982 (D. Colo. 2018). The court thus concluded that there was no barrier to the legislature's delegation of authority to the Commission here and therefore the two-year suicide exclusion was valid and Amica had properly denied payment of the death benefit. *Id.*

¶13   Wertz then appealed to the Tenth Circuit. That court subsequently certified its own question to us, and, reframing that question, we agreed to decide whether the Colorado General Assembly may delegate power to an interstate

7

administrative commission to approve insurance policies sold in Colorado under a standard that differs from Colorado statute.

## II.  Analysis

¶14    We begin by discussing our jurisdiction under C.A.R. 21.1 and the applicable standard of review.  Next, we set forth the pertinent principles underlying the non-delegation doctrine.  Last, we apply those principles to the facts presented here and conclude that the General Assembly did not have the authority to delegate to the Commission the power to adopt the Standard at issue, which effectively overrides section 10-7-109 for Commission-approved policies sold in Colorado by insurers authorized to do business here.

## A.  Jurisdiction and Standard of Review

¶15    Under C.A.R. 21.1, we may answer questions of law certified to us by a federal court if the proceeding before that court involves "questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of the supreme court."  We agreed to answer the certified question from the Tenth Circuit here because it involves a significant question of first impression as to the reach of the non-delegation doctrine in Colorado, and it appears that our answer to this question may be determinative of the underlying dispute.

¶16 The matter before us presents a question of law, and we review such questions de novo. *See Hernandez v. Ray Domenico Farms, Inc.*, 2018 CO 15, ¶ 5, 414 P.3d 700, 702.

## B. The Non-Delegation Doctrine

¶17 Of our three branches of government, only the General Assembly has the power to make law. *See* Colo. Const. art. III ("The powers of the government of this state are divided into three distinct departments, — the Legislative, Executive and Judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this Constitution expressly directed or permitted."); *id.* at art. V, § 1(1) ("The legislative power of the state shall be vested in the general assembly. . . ."); *id.* at art. V, § 17 ("No law shall be passed except by bill, and no bill shall be so altered or amended on its passage through either house as to change its original purpose.").

¶18 Accordingly, it has long been settled that the legislature may not delegate its legislative power to another agency or person. *People v. Lowrie*, 761 P.2d 778, 781 (Colo. 1988); *see also People ex rel. Dunbar v. Giordano*, 481 P.2d 415, 416 (Colo. 1971) ("It is a general rule of law that a legislative body may not delegate the power to make a law or define a law, but it may delegate the power to determine some fact or state of things to effectuate the purpose of the law.").

9

¶19    This so-called non-delegation doctrine derives from the constitutional separation of powers. *Lowrie*, 761 P.2d at 781. It does not, however, absolutely preclude the legislature from delegating certain kinds of authority to an administrative agency. In particular, we have long recognized a distinction between the power to make law, which is non-delegable, and the authority to execute a law, which the legislature may properly delegate to an administrative agency. *See, e.g.*, *Swisher v. Brown*, 402 P.2d 621, 627 (Colo. 1965); *see also People v. Lepik*, 629 P.2d 1080, 1082 (Colo. 1981) ("Although the power to make a law may not be delegated, the power to determine a state of facts upon which the law depends may be delegated.").

¶20    Explaining the limits of the legislature's power to delegate to an administrative agency the authority to execute a law, in *Cottrell v. City and County of Denver*, 636 P.2d 703, 709 (Colo. 1981), we stated that the legislature may delegate power to an administrative agency as long as "there are sufficient statutory standards and safeguards and administrative standards and safeguards, in combination, to protect against unnecessary and uncontrolled exercise of discretionary power." Absent such standards, the delegation will be deemed to violate the constitutionally required separation of powers. *Lepik*, 629 P.2d at 1082.

¶21    Although the foregoing principles are easily stated, the line between the non-delegable power to make a law and the delegable authority to execute a law

10

is not readily susceptible of concise definition. Our case law, however, provides some direction.

¶22 In *Lepik*, 629 P.2d at 1082, for example, we made clear that the legislature cannot delegate to an administrative agency the authority to declare an act a crime. The statute at issue in that case prohibited the introduction into a detention facility of "contraband." *Id.* at 1081. The statute, however, effectively delegated to the administrative head of the detention facility the authority to define the term "contraband." *Id.* at 1081–82. We concluded that because the statute effectively gave unbridled discretion to the administrative head to define the crime, the statute violated the basic principle of law that only the legislature may declare an act a crime. *Id.*; *see also Casey v. People*, 336 P.2d 308, 309 (Colo. 1959) ("Only the legislature may declare an act to be a crime. That precious power cannot be delegated to others not elected by or responsible to the People.") (citation omitted).

¶23 Similarly, we have consistently concluded that the legislature may not delegate to another person or agency the authority to impose statewide taxes. *See, e.g.*, *Miller Int'l, Inc. v. State Dep't of Revenue*, 646 P.2d 341, 345 (Colo. 1982); *see also Cohen v. State Dep't of Revenue*, 593 P.2d 957, 961 (Colo. 1979) ("It is elemental that only the General Assembly may originate taxes."). In *Miller*, 646 P.2d at 343, for example, the Department of Revenue promulgated a regulation that mandated how certain income and sales of a multi-state corporation are to be allocated for

11

tax purposes. We determined, however, that this regulation was inconsistent with the state apportionment statutes. *Id.* at 345. Accordingly, we concluded that in passing such a regulation, the Department had effectively amended and expanded existing tax laws. *Id.* Because the Department lacked that authority, we declared the regulation void. *Id.*

¶24 And perhaps most pertinent here, we have struck down administrative regulations that circumvented the clear terms of a statute. *See, e.g.*, *Graham Furniture Co. v. Indus. Comm'n of Colo.*, 331 P.2d 507, 510 (Colo. 1958). In *Graham Furniture*, for example, an administrative regulation afforded participants in a union election certain rights to challenge the rights of others to vote in the election. *Id.* In our view, however, this regulation contradicted a statute that set forth how one attains the status of an eligible voter. *Id.* Accordingly, we struck down the regulation, concluding, "When a statute clearly provides a method for accomplishing a desired result, it follows that an administrative commission cannot set up a regulation which is contrary thereto. Its regulations must fit within the framework of the statute itself." *Id.* We added, "To hold that the clear words of the statute can be circumvented by a regulation adopted by the Commission is to ignore their plain meaning and confer legislative powers on the Commission." *Id.*

12

¶25 In contrast to the foregoing lines of authority, we have observed that the legislature does not improperly delegate its lawmaking function when it establishes a definite framework for the law's operation and then delegates "the details of rulemaking to an administrative agency to carry out that operation." *Lowrie*, 761 P.2d at 781. Thus, in *Lowrie*, we upheld a statutory delegation of authority to the Executive Director of the Department of Revenue, who was designated as the state licensing authority for the Colorado Liquor Code, to make such rules and regulations as were necessary for the proper regulation and control of alcohol sales and the enforcement of the state's liquor laws. *Id.* at 779, 783.

¶26 In *Lowrie*, the statute at issue required that all rules and regulations adopted by the Director be "reasonable and just," and it identified the types of subjects that the rules and regulations could validly address. *Id.* at 779. In accordance with this statutory authority, the Director issued regulations prohibiting establishments that served alcohol from serving intoxicated persons, allowing employees or patrons to expose certain parts of their bodies, or providing entertainment that involved certain forms of actual or simulated sexual conduct. *Id.* at 779–80. The defendant, who owned a nightclub in which topless dancing was offered as entertainment, was charged with violating certain of these regulations, and she moved to dismiss the charges, claiming that the Liquor Code unconstitutionally delegated to the Director the legislative authority to define criminal conduct. *Id.*

13

We ultimately rejected this argument, concluding that the Liquor Code had (1) provided sufficient standards and safeguards to protect against the unreasonable exercise of the Director's power and (2) placed limits on the Director's authority to make rules and regulations and therefore did not vest him with unbridled discretion as to rulemaking. *Id.* at 783.

¶27 The question before us requires us to apply the foregoing principles to decide whether the legislature's delegation to the Commission of the authority to create uniform standards properly included the authority to adopt the Standard at issue, which effectively overrides Colorado statutory law precluding an insurer doing business in this state from asserting suicide as a defense to payment on an insurance policy after the first year of that policy. We turn next to that question.

## C. The Suicide-Exclusion Standard

¶28 As an initial matter, we note that no one disputes that the Compact authorized the Commission to adopt regulations with the force and effect of law that would be binding on the compacting states, including Colorado. *See* § 24-60-3001, art. IV, § 1. The question before us, however, is whether the Colorado legislature could properly delegate to the Commission the power to adopt a suicide-exclusion Standard that effectively overrides a Colorado statute. We conclude that the legislature could not do so.

14

¶29 Section 10-7-109 "reflects a longstanding public policy in Colorado that disfavors suicide exclusions." *Renfandt v. N.Y. Life Ins. Co.*, 2018 CO 49, ¶ 44, 419 P.3d 576, 584. Thus, although the statute allows the assertion of suicide as a defense to payment on life insurance policies, it limits the right to assert that defense to the first year of the policy. § 10-7-109.

¶30 The Commission's suicide-exclusion Standard, however, expands this limitation and allows insurers who sell Commission-approved policies in Colorado to assert suicide as a defense to payment for the first two years of the policy. Standards, at § 3(Y)(3). In this way, the Standard effectively overrides Colorado statutory law for insurers doing business here.

¶31 In our view, delegating to the Commission the authority to adopt a Standard that so circumvents the clear language of section 10-7-109 is to confer legislative powers on the Commission, and pursuant to the authorities discussed above, the General Assembly may not properly do this. *See, e.g.*, *Graham Furniture*, 331 P.2d at 510 ("To hold that the clear words of the statute can be circumvented by a regulation adopted by the Commission is to ignore their plain meaning and confer legislative powers on the Commission."). And this is so even though, under the Compact, the Colorado Commissioner of Insurance is a member of the Commission and may have voted in favor of the Standard. If the Commissioner believes that the Commission should enact a regulation that conflicts with

15

Colorado statutory law, then he must request action from the Colorado General Assembly because only that body may legislatively override one of its own enactments.

¶32    In reaching this conclusion, we are not persuaded by Amica's and its amici's various arguments to the contrary.  We address these arguments in turn.

¶33    First, we disagree with Amica's assertion that because the Compact provided a means for the General Assembly to opt out of any Standard enacted by the Commission, *see* § 24-60-3001, art. VII, §§ 3–6**,** the legislature did not improperly delegate its legislative authority to the Commission.  As an initial matter, we note that the facts here present a legitimate question as to whether the Compact's opt-out provisions were effective, given that the Commission could give notice of a proposed Standard and the Standard could take effect while the legislature was not in session. *See id.* We need not address this question, however, because even if the opt-out provisions were effective, we have seen no applicable authority excusing an improper delegation of legislative authority merely because the legislature could adopt or reject an administrative agency's legislative action after the fact, and neither Amica nor its amici cite any such authority.  Indeed, in our view, the General Assembly's after-the-fact opt-out could not excuse the Commission's improper legislative action here because the opt-out would apply only prospectively, *see id.* at art. VII, § 5, thus leaving in place the improper

16

Standard in the period between its adoption and the General Assembly's decision to opt out.

¶34 Second, neither *Estate of Liebhardt v. Tasher*, 290 P.2d 1107 (Colo. 1955), nor *People v. Peterson*, 734 P.2d 118, 119–21 (Colo. 1987), on which Amica relies, authorizes the General Assembly to delegate to an administrative agency the power to adopt regulations that override a state statute.

¶35 In *Liebhardt*, 290 P.2d at 1108, we stated, "Rules and regulations adopted by a department of government, unless expressly or impliedly authorized by statute, are without force or effect if they add to, change or modify existing statutes." Relying on this language, Amica contends that our General Assembly can, in fact, delegate to an administrative agency the authority to alter a statute. Amica, however, reads our statement in *Liebhardt* out of context and fails to recognize how the principle set forth in that case has been consistently applied.

¶36 In *Liebhardt*, Liebhardt's aunt died, leaving a large portion of her estate to him. *Id.* at 1107. Within three years of the aunt's death, however, Liebhardt also died, leaving as his sole heirs his widow and son. *Id.* At the time, a Colorado statute provided for a credit on taxes to be paid upon the transfer of certain property (in *Liebhardt*, to the widow and son) if, within the prior three years, the transferor (Liebhardt) had paid taxes on the same property when the property was transferred to him. *Id.* at 1108. Although the statute reflected a clear legislative

17

intent to allow credit for the full amount of the tax imposed if the previously imposed tax exceeded that amount, the Colorado Inheritance Tax Commissioner had devised a formula of his own to compute the tax credit, and this formula resulted in a reduction of the credit due under the statute. *Id.* at 1108–09. We concluded that the Commissioner lacked the authority to enforce the regulation adopting his formula, stating:

> Rules and regulations adopted by a department of government, unless expressly or impliedly authorized by statute, are without force or effect if they add to, change or modify existing statutes. To permit such a proportionate reduction as that made by the Commissioner in the instant case would in effect give legal sanction to a power he does not possess, viz.: authority to amend or add to legislative enactments concerning inheritance and succession taxes.

*Id.* at 1108.

¶37 Accordingly, *Liebhardt* does not allow an agency to alter a statute, as Amica contends. Indeed, it concluded the opposite. Moreover, when read in context, the language on which Amica relies reflects nothing more than the fact that administrative agencies have the power to implement legislative standards if the legislature authorizes them to do so. And the cases that followed *Liebhardt*, which Amica also cites, simply reiterate this point. *See, e.g.*, *Graham Furniture*, 331 P.2d at 510 (citing *Liebhardt* and concluding that an administrative commission cannot set up a regulation that is contrary to a clear statutory mandate); *Adams v. Colo. Dep't of Soc. Servs.*, 824 P.2d 83, 86, 89 (Colo. App. 1991) (referencing the *Liebhardt*

18

standard and concluding that the regulatory scheme at issue was not in conformity with the agency's enabling statute and was therefore without force and effect); *Lorance v. Colo. State Bd. of Exam'rs of Architects*, 532 P.2d 382, 384 (Colo. App. 1974) (citing *Liebhardt* and concluding that the regulatory board at issue had exceeded its authority by expanding the statutory definition of fraud and deceit to encompass conduct not covered by the statute).

¶38 Similarly, in *Peterson*, 734 P.2d at 119–21, a statute allowed the State Department of Highways to set multiple speed limits applicable to various vehicle types or weights if the Department determined, on the basis of a traffic investigation or study, that the speed specified was greater or less than was "reasonable or safe" under the road and traffic conditions. *Id.* at 120 (quoting the statute now codified at section 42-4-1102(1)(a), C.R.S. (2019)). The pertinent question before us was whether such a provision constituted an improper delegation of legislative authority to the Department. *Id.* We concluded that it did not because we believed, based on the authority discussed above, that the delegation to the Department contained adequate standards and safeguards to protect against the uncontrolled exercise of discretionary power by it. *Id.* at 120–21. In particular, the statute required that the alternative speed limits be "reasonable and safe" and provided that the Department could only act after traffic surveys and investigations established that an alteration of the speed limit

was necessary. *Id.* at 121. Accordingly, *Peterson* did not allow an administrative agency to adopt a regulation in conflict with a state statute. Instead, the statute at issue set forth certain standards and delegated to the Department the authority to implement such standards. As set forth above, we have long permitted such delegations of authority. *See, e.g.*, *Cottrell*, 636 P.2d at 709; *Lepik*, 629 P.2d at 1082.

¶39 Third, we are not persuaded that because the Standard only applies to Commission-approved policies, whereas section 10-7-109 would continue to apply to policies approved by the Colorado Commissioner of Insurance, the Commission's suicide-exclusion Standard does not conflict with the statute. As noted above, section 10-7-109 applies to "*any* life insurance policy issued by *any* life insurance company doing business in this state." (Emphases added.) Accordingly, whether approved by the Commission or by the Colorado Commissioner of Insurance, the statute applies as long as the policy was issued by an insurer doing business here. The Commission's suicide-exclusion Standard therefore conflicts with section 10-7-109.

¶40 Fourth, we reject Amica's contention that the interstate nature of the Commission here distinguishes this case from the above-described authorities regarding intrastate delegations of authority to administrative agencies. Although, to be sure, regulations adopted pursuant to an interstate compact can at times override conflicting state law, the cases that have so concluded have

involved interstate compacts that were approved by acts of Congress, and these cases have relied on federal preemption or supremacy clause principles. *See, e.g.*, *Frontier Ditch Co. v. Se. Colo. Water Conservancy Dist.*, 761 P.2d 1117, 1123 (Colo. 1988) (noting that the Compact at issue was part of federal law, having been approved by an act of Congress, and was thus preemptive of any conflicting state law on the same subject). These cases do not assist Amica here, however, because Congress has not approved the Compact at issue, and Amica cites no law supporting its apparent position that *any* interstate compact can supersede conflicting state law. To the contrary, all of the cases on which Amica relies to support its argument involved congressionally approved compacts and thus implicated federal preemption principles. *See, e.g.*, *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 301 (1990) (concerning a congressionally approved compact between New York and New Jersey); *State ex. rel Dyer v. Sims*, 341 U.S. 22, 24–25 (1951) (concerning a congressionally approved compact among eight states to control pollution in the Ohio River); *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 95 (1938) (concerning a congressionally approved river compact between Colorado and New Mexico); *Frontier Ditch*, 761 P.2d at 1123 (concerning a congressionally approved river compact between Colorado and Kansas). Thus, we are not persuaded that the legislature has the authority to

21

delegate to interstate agencies powers that it cannot constitutionally delegate to intrastate agencies.

¶41   Finally, we are unpersuaded by Amica's argument that our conclusion here would limit the effectiveness of interstate compacts that are not approved by Congress. In this case, we conclude only that, in the context of an interstate compact that has not been approved by Congress, the Colorado legislature may not delegate to an interstate administrative agency the power to adopt regulations that conflict with Colorado statutory law because under longstanding Colorado law, such a delegation amounts to the improper delegation of legislative power. We express no opinion on any other form of interstate compact.

## III. Conclusion

¶42   For the foregoing reasons, we conclude that in the context of an interstate compact that has not been approved by Congress, the General Assembly may not delegate to an interstate administrative agency the authority to adopt regulations that effectively override Colorado statutory law. Under longstanding Colorado law, such action would amount to the improper delegation of legislative authority.

¶43   Accordingly, answering the certified question before us narrowly, we conclude that the General Assembly did not have the authority to delegate to the Commission here the power to adopt a Standard authorizing the sale of insurance policies in Colorado containing a two-year suicide exclusion when a Colorado

22

statute prohibits insurers doing business in Colorado from asserting suicide as a

defense against payment on a life insurance policy after the first year of that policy.