QUESTIONS PRESENTED AND CONCLUSIONS
ISSUE 1: Under § 25-7-138, the statutory codification of the relevant air quality portion of Amendment 14, does the Commission possess the legal flexibility to adopt rules that differ significantly in substance or approach from the odor standards adopted in Regulation No. 2, Part B?
ANSWER 1: Yes. The Commission may change its off-site odor standards, but any revised rule must implement the statutory mandate to require housed commercial swine feeding operations ("swine feeding operations") to employ technology to minimize off-site odor emissions to the greatest extent practicable.
ISSUE 2: Does the Commission possess the legal flexibility to adopt cover requirements for anaerobic vessels and impoundments at swine feeding operations that differ significantly in substance or approach from the current requirements in Regulation No. 2, Part B?
ANSWER 2: No. Amendment 14 is plain and unambiguous with regard to the cover requirement. A physical barrier of some type must be placed over anaerobic vessels and impoundments.
ANALYSIS
Background Information
Amendment 14 was approved by the People of the State of Colorado on November 3, 1998. It creates statutory requirements that regulate the odors released by swine feeding operations, which requirements are codified at § 25-7-138, C.R.S. (The statutory provisions regulating odors enacted by Amendment 14 are referred to interchangeably with the term "Amendment 14" in the opinion below.)[1]
Amendment 14 requires the Commission to promulgate rules to regulate swine feeding operation odors. The Commission promulgated such rules on February 19, 1999. The rules adopted by the Commission are set forth as Regulation No. 2, Part B,5 CCR 1001-4. They became effective on March 30, 1999.
The Commission's rules were the subject of intense debate during its rulemaking process. Following promulgation of the rules, significant public concern continues to be expressed about the legal flexibility available to the Commission to amend the regulations it adopted.
This opinion focuses upon two aspects of the Commission's rules. The first concerns odor standards to be met by swine feeding operations, as set forth in § 25-7-138 (3) and in Regulation No. 2, Part B, § III. At the property boundary of the swine feeding operation, a 7:1 odor dilution standard is imposed. Section III.A. (This standard means that when one part of the air at the property line of a swine feeding operation is diluted by seven parts of odor-free air, a trained technician would not be able to detect odor from the swine feeding operation in the mixture.) At an odor "receptor," defined in part as a primary dwelling located outside the property boundaries of the swine feeding operation, a more stringent 2:1 odor dilution standard is imposed. Section III.B.
The second matter is the requirement for a cover over new and existing swine feeding operation vessels and impoundments, as set forth in § 25-7-138(1) and (2) and in Regulation No. 2, Part B, § IV. The Commission's rule requires a physical cover for swine feeding operation vessels and impoundments that treat waste materials using anaerobic processes. The Commission has afforded swine feeding operations some flexibility to use various types of chemical and biological cover technologies in order to meet its rule.
Three provisions of Amendment 14 form the focus of this opinion. The first, § 25-7-138(3), is the basis for the odor standard requirements in Regulation No. 2, Part B, § III. Section25-7-138(3) mandates, in part, that Commission rules shall require a swine feeding operation to "employ technology to minimize to the greatest extent practicable off-site odor from all aspects of its operations . . . ."
The second provision contains a cover requirement for new swine feeding operations. It is set forth in § 25-7-138(1). This portion of the statute declares, in part, that:
 all new or expanded anaerobic process wastewater vessels and impoundments . . . including storage lagoons . . . shall be covered so as to capture, recover, incinerate, or otherwise manage odorous gases to minimize, to the greatest extent practicable, the emission of such gases into the atmosphere.
Finally, a separate statutory cover requirement regulates existing swine feeding operations. It is contained in § 25-7-138(2). It says, in part, that by July 1, 1999:
 all existing anaerobic process wastewater vessels and impoundments . . . including storage lagoons . . . shall be covered so as to capture, recover, incinerate, or otherwise manage odorous gases to minimize, to the greatest extent practicable, the emission of such gases into the atmosphere.
The Power of the Commission to Promulgate Rules
Administrative agencies are creatures of statute in Colorado, and they may act only within the bounds of the authority delegated to them. Colorado-Ute Electric Ass'n, Inc. v. Air Pollution ControlCom'n, 648 P.2d 150 (Colo.App. 1981). This rule reflects the separation of powers embedded in the Constitution of the State of Colorado. Colorado Const., Art. V, § 1 (legislative power vested in the General Assembly and reserved by the People); cf. People v.Holmes, 959 P.2d 406 (Colo. 1998). Delegations of authority to administrative agencies to promulgate rules are common in Colorado's environmental statutes. See, e.g., § 25-7-105(1), C.R.S., (1999) (delegation of general and specific rulemaking powers to the Commission).
The limits of the Commission's rulemaking powers in a particular matter are defined by the scope and the purpose of its statutory delegation of authority. See People v. Holmes, supra,959 P.2d at 409-410 (Colo. 1998). In the matter of odors from swine feeding operations, the Commission's power to promulgate rules is bounded by the authority delegated directly to it by the People in Amendment 14.
When a statute that delegates rulemaking authority to an agency is clear and unambiguous, the agency's rules must give effect to the statute strictly in accord with its terms. Colonial Bank v.Colorado Financial Services Bd., 961 P.2d 579, 582 (Colo.App. 1998); Chevron, U.S.A., Inc. v. Natural Resources Defense Council,Inc., 467 U.S. 837 (1984). If a delegating statute imposes specific requirements that are harsh or difficult, for example, a rule promulgated by the Commission under its authority must reflect the same qualities.
Statutory provisions that authorize or require rulemaking vary in precision and clarity. Compare, e.g., § 25-7-105(1) (general grant of rulemaking authority) with § 25-7-105(13) (requiring commission to include inspection of diagnostic system in automobile emission inspection rules). Therefore, the latitude available to an agency to choose a lawful path from among a range of alternative options can differ widely from statutory provision to provision. Chevron,supra, 467 U.S. at 843. This scope of agency power to choose rule requirements from a set of options is often referred to as the "discretion" available to the agency in a rulemaking. When a statute is general rather than narrow and explicit, an agency has considerable discretion. See North Colorado Medical Center v.Committee on Anticompetitive Conduct, 914 P.2d 902, 907 (Colo. 1996). In contrast, when a statute clearly and unambiguously requires a particular regulatory approach, the agency has little discretion as it promulgates a rule. See id.
Discussion of Issue 1
Pursuant to § 25-7-138(3), swine feeding operations must "employ technology to minimize to the greatest extent practicable off-site odors" from their facilities. The two odor standards that are the subject of this opinion were adopted by the Commission to implement this provision.
As described above, Regulation No. 2, Part B, § III.A requires swine feeding operations to meet a 7:1 dilution standard at the property line of the operation. Using that dilution ratio and appropriate monitoring equipment, odors "shall not be detected" at the property line. Section III.B. of Regulation No. 2, Part B, requires swine feeding operations to meet a 2:1 dilution standard at an off-site "receptor." For purposes of this standard, the term "receptor" is defined as a dwelling used as a "primary dwelling," various schools and businesses, or the boundaries of certain municipal subdivisions.
The question presented with regard to these rules is whether the Commission has the legal flexibility under Amendment 14 to adopt different odor standards or other approaches to implement this statutory language. An examination of the statute reveals that it does.
When the plain language of an organic statute allows a wide range of regulatory choices, the Commission may lawfully choose to promulgate any reasonable alternative within that range. NorthColorado Medical Center, supra, 914 P.2d at 907. In this instance, the language of § 25-7-138(3) is intentionally broad, and it is obviously intended to bestow considerable discretion upon the Commission. The statute requires the Commission to adopt rules that will require the use of technology to minimize off-site odor emissions to the greatest extent practicable, but leaves it to the Commission to determine the appropriate regulatory means to that end. Amendment 14 thus delegates considerable discretion to the Commission to give meaning to this key statutory term. SeeChevron, supra, 467 U.S. at 842-843.
The Commission exercised its discretion in a reasonable fashion by focusing upon the level of odor that results when appropriate technologies are used. It established mandatory odor control requirements and commanded that additional technological approaches must be adopted if odor standards are not met. Regulation No. 2, Part B, § IX.A. For these reasons, the Office of the Attorney General found no constitutional or legal deficiency when it reviewed the rules pursuant to § 24-4-103(8), C.R.S. (1999). Opinion of the Attorney General Rendered in Connectionwith the Rules Adopted by Air Quality Control Commission onFebruary 19, 1999 (February 26, 1999).
The Commission remains free, at any time and in its discretion, to reconsider its regulatory actions under Amendment 14. Mayberry v.University of Colorado Health Sciences Center, 737 P.2d 427
(1987). If the Commission changes its existing rule at some point in the future, its new rule also must be based upon a rational foundation within the dictates of Amendment 14. Id.; Office ofCommunications of United Church of Christ v. F.C.C., 707 F.2d 1413
(C.A.D.C. 1983).
Although the Commission has the discretion to revise the odor standards rules, it does not have the authority to contravene the statute. See Miller Int'l, Inc. v. State of Colorado, 646 P.2d 341
(1982). Any rule revision adopted by the Commission must implement the statutory charge to minimize to the greatest extent practicable off-site odor emissions from all aspects of the swine feeding operation. In order to amend the odor standards, the Commission would have to determine that the rules, as revised, comply with this statutory directive.
Discussion of Issue 2
When the rules of Colorado's administrative law are applied to the cover requirements in § 25-7-138(1) and (2), the conclusion is manifest that only narrow rulemaking discretion is available to the Commission. This result follows because the statutory cover requirements in Amendment 14 are clear and unambiguous.
The clarity of the cover requirements of §§ 25-7-138(1) and (2) follows directly from the structure and language used in these provisions. First, absent clear indication of contrary legislative intent, the use of the term "shall" in a statute is mandatory.Swift v. Smith, 119 Colo. 126, 201 P.2d 209 (1948); but see Cityof Colorado Springs v. Street, 81 Colo. 181, 254 P. 440 (Colo. 1927) ("shall" will be construed as "may" if necessary to effect legislative intent). The Amendment 14 commandment that anaerobic vessels and impoundments "shall be covered" is a clear mandate that action is required.
The term "cover," as used in this statute, is susceptible only to a narrow range of interpretation. The Commission's rules mandate that a "continuous, physical barrier" must be used at new and existing anaerobic vessels and impoundments. Regulation No. 2, Part B, § II.G. The Commission further interprets the cover requirement to allow the use of aerobic covers, comprised of fluids with certain physical and chemical characteristics, or biocovers, such as a layer of straw. Regulation No. 2, Part B, § III.A.3.c. and d. The dictionary defines the verb "cover" to mean ". . . [t]o place something upon or over, so as to protect or conceal . . . [t]o overlay or spread with something . . . ."American Heritage College Dictionary 320 (3rd edition 1997). The Commission's rules are a reasonable interpretation of the meaning of this portion of Amendment 14.
Though its use is unnecessary here because of the clarity of the statute itself, the legislative history of Amendment 14 nonetheless substantially supports the conclusions just stated. The analysis of Amendment 14 published by Legislative Council of the Colorado General Assembly is its legislative history. In reProposed Initiative Pertaining to Public Rights In Water II,898 P.2d 1076 (Colo. 1995).
In this instance, this legislative history provides particularly useful insight into the electorate's understanding of the cover requirements of Amendment 14. First, when describing an argument supporting the adoption of Amendment 14, the Legislative Council declares:
 To minimize odor, this proposal requires that hog facilities cover storage lagoons . . . .
Legislative Council of the General Assembly, Analysis of 1998 Ballot Proposals. Second, in its description of arguments adverse to Amendment 14, the Legislative Council states the following:
 By requiring the use of specific odor control measures such as covering lagoons, the proposal limits the use of other methods and new technologies that may be more effective.
 Id. Thus, the electorate clearly understood and intended that swine feeding operations would be required to place a physical cover of some sort over anaerobic storage lagoons and vessels.
In its February rulemaking, the Commission could exercise only limited rulemaking discretion to define the cover requirements in Amendment 14. It carried out its duties properly in this regard. The Commission remains free to change its existing requirements, so long as it has a rational basis to do so. Nevertheless, such legal flexibility can be exercised in the future only within the narrow range of alternatives allowed by Amendment 14.
SUMMARY
The Commission possesses some legal flexibility to alter its rules for the off-site regulation of odor from swine feeding operations. Its choice to adopt the boundary and receptor standards the Commission promulgated in Regulation No. 2, Part B, falls well within this discretion. The Commission may change its off-site odor rule if it so chooses, so long as the revised rule requires swine feeding operations to employ technology to minimize to the greatest extent practicable off-site odor emissions. In contrast, the Commission's legal flexibility to alter the rules it has made for cover requirements for anaerobic vessels and impoundments is substantially limited under Amendment 14. Amendment 14 authorizes the Commission to exercise only narrow discretion as it promulgates rules to require covers over anaerobic vessels and impoundments at swine feeding operations. Amendment 14 is plain and unambiguous with regard to the cover requirement. A physical barrier of some type must be placed over anaerobic vessels and impoundments. Thus, only limited legal flexibility exists for the Commission under this provision.
Issued this _____ day of April, 1999.
KEN SALAZAR Attorney General
ALAN GILBERT Assistant Deputy Attorney General
FRANK R. JOHNSON Assistant Attorney General
[1] Amendment 14 also made changes to § 25-7-109, C.R.S. and included provisions related to water quality which are not addressed by this opinion. See §§ 25-8-501.1 and 25-8-504, C.R.S.